## FRENCH *v.* THE STATE.

If an indictment is conveniently legible, it will not be held bad because it contains interlineations; and in the absence of anything appearing upon the face of a written instrument, or being shown extrinsically, tending to prove that interlineations were made subsequently to its execution, it will be presumed they were made before or at its execution.

In the absence of anything tending to show the contrary, if the record recite a

. jury of twelve lawful men, it will be presumed that the panel of jurors possessed the requisite qualifications.

For evidence deemed sufficient to sustain a verdict of guilty, on an indictment for murder, see the opinion, point 3.

The Court, in this case, gave the following instruction: "Evidence which tends to establish the defendant's guilt, also tends, in an equal degree, to prove that he was present at the time and place when and where the deed was committed; and, if he seeks to prove an *alibi*, he must do it by evidence which outweighs that given for the state, tending to fix his presence at the time and place of the crime." *Held*, that this was error; that if the evidence on behalf of the prisoner raises a reasonable doubt of the truth of the charge, he must be acquitted, and this doubt may arise from the whole of the evidence in the case; that the rule is in nowise different in a case where the defendant sets up an *alibi*, from what it is where other affirmative matter is relied on.

APPEAL from the *Carroll* Circuit Court.

PERKINS, J.— *William French* was indicted for the murder of *Hannah Briney*, was convicted, and sentenced to suffer death. He has appealed to this Court, and claims that the judgment against him should be reversed for the following reasons:

1. Because the Circuit Court refused to sustain his motion to quash the indictment.

The objection to the indictment was that it contained interlineations.

If the indictment was conveniently legible, it would not be bad simply because it contained interlineations; and, in the absence of anything appearing upon the face of a written instrument, or being shown extrinsically, tending to prove that interlineations were made subsequently to the execution of the instrument, it will be presumed they were made before or at its execution. *Stoner* v. *Ellis*, 6 Ind. R. 152.

2. Because the jurors by whom he was tried are not shown by the record to have possessed the statutory qualifications.

In the absence of anything tending to show the contrary, in cases where the record recites a jury of twelve lawful men, it will be presumed that the panel of jurors did possess the requisite qualifications. Ind. Dig., pp. 364, 546.

May Term,
1859.

FRENCH
v.
THE STATE.

3. Because the verdict was not sustained by the evidence.

It appears that on the morning of the 26th of *November*, 1858, *Hannah Briney* was living, and in good health; that she was about nineteen years of age, and had been married between eight and nine months. She was advanced near six months in the state of pregnancy. About nine o'clock, in the morning of that day, her husband left her in the family residence, but just ready to start to go to the house of a brother to spend the day. Her hair was put up, her bonnet and shawl were brought out and hung upon a chair, and she was standing in the door. At night, about dusk, the husband returned home. The bonnet and shawl of the wife were hanging upon the chair where they were when he left in the morning, but the wife was not in the house. Upon search, her body was found in the well, in a position indicating that she might have fallen or been thrown in backwards. Her hair was disheveled, and filled with burs and twigs, and her body was naked. Her clothes, torn to rags, were in the well, some of them in the tin bucket which had been used by the family for drawing water from the well, and which was found in the bottom. There was no curb or guard around the well. There were burs and brush in the yard about the house, and not far distant from the well; but whether any were floating in the well does not appear. There were no marks of violence upon the body.

There was evidence tending, though but slightly, to show that *French* had been seen in the public highway, about three quarters of a mile from the house, and going in an opposite direction, in the afternoon of the day of the death of Mrs. *Briney*.

It would appear that *French* was an uncouth, repulsive appearing man, and a stranger in the neighborhood of *Briney's*. Two witnesses testified that *French* confessed to them that he called at the house of Mr. *Briney*, and found Mrs. *Briney* there alone; that he inquired if her husband wanted to hire help, and was answered in the negative; that he took the woman for a whore, and asked

May Term,
1859.

FRENCH
v.
THE STATE.

her to grant him sexual indulgence; that she hesitated a little; whereupon he took hold of her, and she yielded; that he threw her down a second time amongst the brush in the yard; that after he had started to leave, he said to her that he had a mind to throw her into the well, and she replied that he was not man enough for that; whereupon he turned back, seized her and threw her in.

There was evidence tending to prove that on the 26th of *November*, 1858, *French* was at work for Mr. *James Pepper*, in *Pulaski* county, some fifteen or twenty miles from the residence of *Briney*.

The evidence, it will be seen, consisted of confessions. Like evidence of an *alibi*, that of confessions is to be received with great caution.   1 Greenl., p. 320.   If the jury believed the evidence on the part of the state, and disbelieved that on the part of the defense, we think they might find the defendant guilty.

4. Because the Court gave the jury the following instruction :

" Evidence which tends to establish the defendant's guilt, also tends, in an equal degree, to prove that he was present at the time and place, when and where the deed was committed; and, if he seeks to prove an *alibi*, he must do it by evidence which outweighs that given for the state, tending to fix his presence at the time and place of the crime."

This instruction is not in accordance with the general rule of law, as applied either in civil or criminal cases; for in the former, the defendant is not bound to produce evidence which outweighs that of the plaintiff.   If he produces evidence that exactly balances it, so as to leave no preponderance, he defeats the suit against him.

And in criminal cases, the rule is, that if the defendant produces evidence which raises a reasonable doubt of the truth of the charge against him, he must be acquitted. And this doubt may arise upon the whole of the evidence in the case.   " Neither a mere preponderance of evidence, nor any weight of preponderant evidence, is sufficient to convict, unless it generate full belief of the fact of guilt,

May Term,
1859.

FRENCH
v.
THE STATE.

to the exclusion of all reasonable doubt." 3 Greenl. Ev., p. 29.—*Hall* v. *The State*, 8 Ind. R. 439. So if there is a reasonable doubt about the existence of any necessary link in the chain of evidence. *Sumner* v. *The State*, 5 Blackf. 579.

We must inquire, then, whether the rule of law is different in a case where the defense of an *alibi* is set up, from what it is in cases where other affirmative matter is relied on.

We have found no elementary writer asserting such a proposition. Bouv. Dict., *h. t.*—1 Arch. Cr. Pl., p. 123.— Wills on Cir. Ev., side p. 133.—Burr. on Cir. Ev., p. 519. They all agree that it is evidence of a suspicious character, that it should be most rigorously sifted, cautiously confided in; but when, having been subjected to severe scrutiny, it is ascertained to have been, in a given case, honestly and truthfully given, we are unable to discover any reason why it should not have equal weight and influence with the same weight of evidence upon any other subject.

What is said in the case of *The Commonwealth* v. *Webster*, 5 Cush. 320, seems to militate against this view. But when we look at the facts of that case, and consider the instruction as applied to those facts, it will be seen that it is not an authority in the case at bar. There, the effort was not to prove an *alibi* as to the accused, but to prove that the person who was alleged to have been murdered was still alive. The state had produced a dead body, identified it as that of Dr. *Parkman*, who was alleged to have been murdered, and proved the murder to have been perpetrated by Dr. *Webster*, the accused. Dr. *Webster*, in defense, then attempted to prove that Dr. *Parkman* was still alive, not by producing his body in Court, or by showing where he then was, but by statements of persons that they had seen Dr. *Parkman* walking in the streets of *Boston* on the day after the murder was shown to have taken place. Now, this evidence could scarcely be said to tend to disprove the crime of murder with which the defendant was charged, but rather to go to prove that the murder was of another individual. Per-

haps, in such a case, where a defendant seeks to show, not that he has not committed murder, but that there is a mistake as to the individual charged to have been murdered, a preponderance of evidence to show the mistake may be required.   But as to this we give no opinion.

*Per Curiam.*—The judgment is reversed with costs. Cause remanded for a new trial.

*H. M. Graham*, *J. F. Suit*, and *J. C. Applegate*, for the appellant.

*J. E. McDonald* and *A. L. Roache*, for the state.