## SATER ET AL. *v.* THE STATE.

CRIMINAL LAW.—*Indictment.*—*Abatement.*—*Grand Jury.*—*Irregularity.*—Irregularity, not amounting to corruption, in the selection or reassembling of a grand jury, is not ground for a plea in abatement of an indictment found by them.

SAME.—*Instruction to Jury.*—*Subornation of Testimony.*—On the trial of a defendant charged with a crime, it is error in the court to instruct the jury, that if, from the evidence, they are satisfied that the defendant has "induced, by any means, any witness in this case to testify falsely, such fact would raise a strong presumption of guilt."

SAME.—The perpetration of such act by the defendant is a circumstance, which, with all others in the case, may be weighed by the jury in determining the question of guilt or innocence.

SAME.—*Alibi.*—An instruction to the jury on the trial of a defendant in a criminal case, in relation to uncontradicted evidence offered by him to establish an *alibi*, tending to cast a suspicion on such evidence, is erroneous.

SAME.—*Evidence.*—Evidence of an *alibi*, introduced by a defendant, should be subjected to the same, and no other, test, that evidence of any other material fact is subjected to.

From the Bartholomew Circuit Court.

*F. T. Hord* and *Keyes & Smith*, for appellants.

*C. A. Buskirk*, Attorney General, for the State.

NIBLACK, J.—This was a prosecution for grand larceny.

On the 28th day of August, A. D. 1876, the judge of the Bartholomew Circuit Court made an order that the grand jury, which had been selected and empanelled for Bartholomew county, at the April term preceding, should be summoned to reassemble on the first day of the September term then next ensuing.

As the record informs us, the following proceedings were had in relation to the empanelling of a grand jury on the first day of the said September term:

"And now, at this time, comes William B. Davis, sheriff of said county, and brings with him the following panel of grand jurors, to wit: John H. Long, Jesse Walker, Jesse Hunter, William White, Albert Louden and Tunis G. Quick, six good and lawful men, householders

or freeholders of said county, and the court appoints John H. Long foreman of said grand jury, and said jury are now duly sworn and empanelled, and, after receiving the charge of the court, retire to their room in care of Philip Rhodes, their sworn bailiff."

On the third day of the term, the grand jury thus empanelled returned into court an indictment against the appellants, charging them with having, on the 3d day of July, A. D. 1876, stolen twelve hundred dollars, in current money, from one Edward Springer.

The appellants appeared to the indictment, and pleaded in abatement of it, as follows:

" The defendants now come and plead in abatement of the indictment returned herein, that the grand jury empanelled and sworn at the April term, 1876, of the Bartholomew Circuit Court, were John H. Long, Albert Louden, Jesse Hunter, Robert M. Little, William H. Aiken and Tunis G. Quick. That it was the first term of their meeting as a grand jury, and they were selected and empanelled for the April and September terms of said court. That the indictment herein was found at the September term, 1876, of said court. That said grand jury, so empanelled at the April term, 1875, of said court, did not return said indictment, but the Bartholomew Circuit Court, at the September term aforesaid, called together and empanelled another and different grand jury, without authority of law, to wit: John H. Long, Jesse Walker, Jesse Hunter, William M. White, Albert Louden and Tunis G. Quick. That Jesse Walker and William M. White were substituted for Robert M. Little and William H. Aiken. That said Robert M. Little and William H. Aiken were, at the September term of said court, and prior thereto, and continually since, residents of said Bartholomew county, and at all times present therein, and could have been summoned to attend as grand jurors at said term, and would have been present if summoned, but defendants aver that they were not summoned.

That at the time of calling and empanelling said grand jury, and of finding and returning of said indictment, at said September term of court, defendants were not in custody for said alleged offence, nor was any indictment or affidavit pending against them, nor was any charge pending against them for said offence, or for any offence. And said grand jury summoned and empanelled, and who returned said indictment, was not authorized by law, as they are advised."

A demurrer was sustained to this plea in abatement, to which the appellants excepted.

There was afterward a trial, resulting in the conviction of the appellants, and in sentencing each of them to imprisonment in the state-prison for six years, to disfranchisement for one year, and to pay a fine of fifty dollars.

We think the plea in abatement was obviously insufficient. No corrupt motive or other gross official misconduct is alleged against the sheriff or any of the other officers of the court, as a reason for the failure to summon the said Robert M. Little and William H. Aiken. No objection can be taken to the failure to summon them, by plea in abatement, unless the failure constituted, in the opinion of the court, an irregularity amounting to corruption, on the facts alleged in the plea. No such irregularity was alleged in the plea in this case. 2 R. S. 1876, p. 419, sec. 12.

When Little and Aiken failed to appear, the court was authorized, in its discretion, to fill their places with other freeholders or householders of the county. 2 R. S. 1876, p. 418, sec. 10. It will be presumed that the places of the absent grand jurors were filled under the direction of the court. *Kessler* v. *The State*, 50 Ind. 229.

The grand jury in this case seems to have been composed of the proper number of duly qualified persons of the county, and to have been regularly sworn and charged. In the absence of any alleged irregularity, amounting to corruption, we must presume that all the legal steps were

taken which were necessary to bring the grand jurors properly into court, and for their organization as a grand jury. *Hardin* v. *The State*, 22 Ind. 347; *Bell* v. *The State*, 42 Ind. 335; *Long* v. *The State*, 46 Ind. 582; *Holloway* v. *The State*, 53 Ind. 554; *Ward* v. *The State*, 48 Ind. 289; *Meiers* v. *The State*, *ante*, p. 336.

On the trial, the court instructed the jury, that, "if you are satisfied, from the testimony, that the defendants have caused or induced, by any means, any witness in this case to testify falsely, such fact would raise a strong presumption of guilt."

In our opinion, this instruction was erroneous.

Wharton on Criminal Law, vol. 1, sec. 717, after citing authorities on the subject of false, forged and fabricated evidence, says:

"The fact of a forgery of evidence having taken place is, therefore, simply a circumstance from which, in connection with others (proof of the *corpus delicti* being essential), guilt may be inferred. Taken by itself, an innocent but weak man is almost as likely to resort to it as is an experienced rogue. Frequently an innocent man, sensible that, although guiltless, appearances are against him, and not duly weighing the danger of his being detected in clandestine attempts to stifle proof, has endeavored to get rid of real evidence in such a way as to avert suspicion from himself, or even to turn it on some one else."

Greenleaf on Evidence, vol. 1, sec. 37, in referring to this subject, says:

"The fabrication of evidence, however, does not of itself furnish any presumption of law against the innocence of the party, but is a matter to be dealt with by the jury. Innocent persons, under the influence of terror from the danger of their situation, have been sometimes led to the simulation of exculpatory facts; of which several instances are stated in the books."

Undoubtedly, the fabrication of evidence by a party

accused of crime is always a circumstance to be taken against him as tending to prove his guilt. It may sometimes constitute a strong and even powerful circumstance to be weighed in connection with other evidence in the case, but it does not create a legal presumption against him. See, also, Burrill Cir. Ev., p. 558; 2 Best Ev., sec. 415. *White* v. *The State,* 31 Ind. 262.

The court also gave the jury the following instruction:

" The defendants have introduced evidence to establish an *alibi,* or, in plain language, to show that they were at another and different place, at the time the alleged offence was committed. This evidence should be considered by you, and if it raises a reasonable doubt in your minds as to the defendants' guilt, or either one of them, you should give the defendants the benefit of such a doubt and acquit them. Evidence of this kind, in question, should be subjected by you to a severe scrutiny; you should sift it rigorously, and consider it in connection with all the other evidence in the case. It is not an uncommon artifice, to give coherence and effect to a fabricated defence of this kind, by assigning the event of another time to that on which the offence was committed, so that the events, being true in themselves, are necessarily consistent with each other, and false only as they are applied to the time in question. Still, if, when fully considered with the other evidence before you, it raises a reasonable doubt as to the defendants' guilt, you should acquit them."

We are also of the opinion, that this instruction did not state the law correctly, as applicable to the evidence in the cause. Taken altogether, it tended too strongly to cast suspicion on an *alibi* as a defence, and to prejudice the minds of the jury against such a defence. It seems to have been intended, too, by it to lay down a more rigorous rule for the consideration of evidence tending to prove an *alibi* than was required as to other evidence in the cause. It is probably true, that when a case is otherwise fully made out, evidence produced to prove an *alibi* ought

to be scrutinized very carefully; but we are not aware that any different rule applies to such a case than is applicable to any other affirmative defence.

In *French* v. *The State*, 12 Ind. 670, it was said: "We must inquire, then, whether the rule of law is different in a case where the defence of an *alibi* is set up, from what it is in cases where other affirmative matter is relied on.

"We have found no elementary writer asserting such a proposition." See, also, 1 Greenl. Ev., 13th ed., sec. 81 *c.*

In *Kaufman* v. *The State*, 49 Ind. 248, this court said: "An *alibi* is a legitimate defence, and if the evidence touching it was sufficient to raise a reasonable doubt of the appellant's guilt in the minds of the jury, it should have been considered, although the *alibi* did not cover the whole time during which the crime was committed." *Adams* v. *The State*, 42 Ind. 373; *Binns* v. *The State*, 46 Ind. 311.

In the case before us, the State relied entirely on circumstantial evidence for the conviction of the appellants. As to many of the matters relied on, there was a sharp conflict between the testimony of some of the witnesses. Several witnesses testified that the appellants stayed all night at the house of Stephen Sater, a quarter of a mile distant from the scene of the crime, the night during which the larceny was committed, which was on a Sunday night. No one testified to having seen the appellants outside of Stephen Sater's house that night. Under the circumstances, we think, there was nothing in the evidence which justified the suspicion cast by the instruction on the *alibi* relied on in this case, and on the testimony given to sustain it. *Line* v. *The State*, 51 Ind. 172. If there had been a conflict in the testimony as to the time covered by the *alibi*, the instruction might have been applicable, but there was no such conflict in this case. In other respects the instruction stated the law correctly.

Several other questions were reserved on the trial, but as the judgment must be reversed for the errors already

noticed, and as these questions may not arise on a subsequent trial, we will not consider them now.

The judgment is reversed, and the cause remanded for a new trial.

The clerk will give the necessary notice for the return of the prisoners.