## William H. Dodd *v.* The State.

1. PRACTICE — INDICTMENT.— Objections to an indictment based upon erasures or interlineations can be reached under our Code only by exceptions to the form. Such exceptions should be framed for the want of any of the requisites or forms prescribed by article 420 of the Code of Criminal Procedure, subdivisions 2 and 3.

2. SAME.— If the interlineations were made after the indictment was presented by the grand jury, it would appear that such indictment was not presented in the District Court by, and was not in fact the act of a grand jury, and such exceptions could be taken only under the subdivisions quoted. But if by reason of interlineations and erasures admitted to have been made by the grand jury the objection could be maintained that the offense was not set forth in plain and intelligible language, such exception could also be reached under subdivision 7 of article 420.

3. SAME.— The Code of this State allows no such plea to an indictment as a plea in abatement. See the opinion *in extenso* for a discussion of pleas to indictments.

4. SAME.— The court and not the jury is to decide what are the words of an indictment or other pleading. If there is doubt which of two words is meant, the sensible rendering will be accepted. Bad handwriting, if legible, is not ground of legal objection. Erasures and interlineations will not necessarily render the pleading bad.

5. SAME.— BURDEN OF PROOF is on the defendant to show by irresistible proof that the erasures and interlineations were not the act of the grand jury.

6. INDICTMENT—POSSESSION AND OWNERSHIP—CASE STATED.—It was urged below that the indictment was fatally defective in that it alleged the possession of the animal stolen in one person, viz.: "Richard Godfrey M. D. Chastain," and at the same time avers that it was "the property of said Godfrey and M. D. Chastain without the consent of the owner or either of them." The position that the omission of the conjunctive " and " between " Richard Godfrey " and " M. D. Chastain," in the allegation of possession, makes them but one person in law, is untenable in view of the fact that the indictment further refers to the owners as "said Godfrey *and* M. D. Chastain," and the omission of the conjunction in the allegation of possession could not have misled the jury.

7. EVIDENCE—THEFT OF ANIMALS.—To sustain an accusation of theft of animals, ownership can be proved independent of a bill of sale; and exclusive possession, care, management and control of such property is sufficient proof of ownership.

APPEAL from the District Court of Menard. Tried below before the Hon. W. A. BLACKBURN.

The indictment charged the theft of a cow, and the punishment assessed by a verdict of guilty was a term of two years in the penitentiary.

On the part of the State it was testified that the appellant, in February, 1876, on the highway in Menard county, butchered a large red cow branded Z. The time of the act was shown partly by direct testimony, and partly by showing that it was done in the month succeeding that in which one Bolls was killed, which was shown to have been in January, 1876. Ownership, care and control of the brand, and that they gave no consent to the appellant to kill or appropriate any of that brand, was testified to by Godfrey and Chastain, in whom the property was alleged in the indictment.

On behalf of the appellant it was testified by his wife that he was in Brown county, and not in Menard county, in February, 1876; that he left Menard county in December, 1875, and had not since been back. She further testified that early in 1875 she bought a two-year-old red heifer from John Jackson, branded Z. Jackson testified

that at one time he traded either. to the appellant or his wife a cow and heifer calf. The cow was branded R. J., but the calf was neither marked nor branded so long as the witness knew anything of it.

*W. A. H. Miller* and *John Dowell*, for the appellant.

*J. H. McLeary*, Attorney General, for the State.

White, P. J.   We know of no other mode by which objections to an indictment on account of erasures or interlineations can be urged under our Code of Procedure than by exceptions to the form of the indictment.  Code Crim. Proc. art. 488.   Such exceptions are permitted for the want of any requisite or form prescribed by art. 420. Under art. 420 we imagine that such exception might be based upon subdivisions two or three, which provide with regard to the sufficiency of the indictment that "it must appear therefrom that the same was presented in the District Court of the county where the grand jury is in session," and "it must appear to be the act of a grand jury of the proper county."   If the interlineations or erasures were made after the indictment was presented by the grand jury, then indeed it might well be claimed that such indictment was not presented in the District Court by, and was not in fact the act of a grand jury.   If, by reason of erasures and interlineations admitted to be made by the grand jury, the objection could be maintained that the offense was not set forth in plain and intelligible words, exception based upon that ground might also be reached under subdivision 7 of art. 420.   It is manifest from the Code of Procedure itself that objections of such character are not and do not come within either the designation or purview of motions to set aside indictments (Code Crim. Proc. art. 523), nor of the special pleas which are the only ones which can be made and heard for a defendant. Code Crim. Proc. art. 525.   Under this latter article only

two special pleas are mentioned, 1st, former conviction, and 2d, former acquittal; none others are known and recognized by express provision. These are the special pleas which must be verified by affidavit, and all issues of fact presented by them must be tried by a jury. Code Crim. Proc. arts. 526, 527.

In the case we are considering the erasures and interlineations urged against the validity of the indictment are presented in what appellant's counsel denominates a plea in abatement, which plea they also claim was a special plea, and if a special plea that then it raised a question of fact which should have been tried by the jury, and not, as was done in this instance, by the judge alone. The plea was not a special plea, because, as we have seen, no such special plea is provided for or allowed by law. If not a special plea, then the question of fact was not one which the law required should be submitted to the jury, and consequently could be tried and determined by the court. Though called a plea in abatement, the objection was in fact, and could only be treated as an exception to the validity of the indictment; and the question, and only question, raised by the exception was — not whether there were interlineations and erasures — but whether they were made before or after the indictment was returned by the grand jury. If made before, and the language of the indictment, with the erasures and interlineations, was still plain and intelligible, the exception would be worthless, and should, as we shall hereafter see, have been overruled, as was done in this case. As declared by Mr. Bishop, the rule is, "The court and not the jury is to decide what are the words of an indictment or other pleading. If there is doubt which of two words is meant, the sensible rendering will be accepted. Bad handwriting, if legible, is not ground of legal objection. Erasures and interlineations will not necessarily render it bad." 1 Bish. Crim. Proc. (3d ed.) sec. 338.

In *State* v. *Florez*, the Supreme Court of Louisiana upon a similar question say, "it is alleged that the indictment has upon its face 'alterations, interlineations, and interpolations made in a different handwriting from the body of the indictment, and not expressly authorized or noted in any manner by the grand jury; and that the grand jury alone have power to amend or authorize an amendment to their indictment?' It is no doubt proper and commendable in all officers of the State to present the public documents emanating from them in a fair hand, without erasures or interlineations. But in this case we have no doubt from the testimony that the indictment appears on record *verbatim et literatim* as it was presented by the attorney general and found by the grand jury; and we would take this for granted without statement or proof on behalf of the State until the defendant should establish the contrary by irresistible proof." 5 La. Ann. 429.

To the same effect it was held in *French* v. *State*, 12 Ind. 670, that "if an indictment is conveniently legible it will not be held bad because it contains interlineations, an l in the absence of anything appearing upon the face of a written instrument, or being shown extrinsically, tending to prove that interlineations were made subsequently to its execution, it will be presumed that they were made before or at its execution."

And in *May* v. *State*, 14 Ohio, 461, it was held that "a letter added to a word in an indictment in pencil mark before the indictment is found by the grand jury does not vitiate the indictment." And so also in the *Comm.* v. *Fagan*, 15 Gray's (Mass.) R. 194, the court hold that "erasures and interlineations in an indictment, without any note or certificate to show when or by whom they were made, afford no ground of arresting judgment."

Now, though our statute provides that an indictment shall be prepared by the attorney representing the State, and shall be delivered to the foreman of the grand jury

for signature (Code Crim. Proc. art. 413), we apprehend that it was never intended that the foreman should sign an indictment not found by the grand jury, nor that the grand jury could not correct any mistake made by the attorney in preparing said bill, so as to make it conform to their findings. Because "an indictment is the written statement of a grand jury (not of the attorney representing the State), accusing a person therein named of some act or omission which by law is declared to be an offense." Code Crim. Proc. art. 419. If the attorney representing the State has committed a mistake in preparing the instrument, with regard to proper parties, necessary dates or particular facts, it would not only be the right but the duty of the grand jury, when their attention was called thereto, to correct such mistakes, because their oath of office requires of them that "they shall present things truly as they come to their knowledge." Code Crim. Proc. art. 384.

Whilst it is true the district attorney in this instance swears the interlineations and erasures in the indictment we are considering were made after he had prepared the same, and were not in his handwriting, he does not say, nor does any witness attempt to prove, that they were made after the indictment was returned to and filed in court by the grand jury, nor that they were not the act of the grand jury themselves, done and made before such return and filing. That they were not the act of the grand jury and done before the return and filing, it was the duty and burden of the defendant to show and establish by irresistible proof. This was not done to the satisfaction of the court below, and we are of opinion the ruling of the court was correct,— the evidence failing to show any ground of suspicion even that the grand jury had not, as was their right, made the changes complained of, to conform to their findings.

But it is earnestly contended that the indictment is fatally defective in that it alleges the possession to have been in one person, viz.: Richard Godfrey M. D. Chastain, and at the same time avers that it was "the property of said Godfrey and M. D. Chastain, without the consent of the owner or either of them." The position is that the want of the conjunctive "*and*" between Godfrey and M. D. Chastain in the allegation of possession makes them but one person in law. *State* v. *Toney*, 13 Texas, 74. This objection is hypercritical when we read the whole count and find the owners referred to as "said Godfrey *and* M. D. Chastain." There was but one count in the indictment, and no one could be misled as to its meaning, or the number of names and individuals used and mentioned in it, when read as an entirety. In Toney's case there was nothing in the indictment to indicate that "Edward Toney Joseph Scott" was not one single individual. The two cases are not analogous. We are of opinion, as is remarked by the attorney general in his brief, that "the indictment, though not elegant in appearance or artistic in form, contains all the essential elements of a good pleading."

There was no error in refusing to exclude the parol evidence of ownership after such evidence disclosed an ownership claimed and held under a written bill of sale. To sustain an accusation of theft of animals, ownership can be proven independent of a bill of sale, and exclusive possession, care, management and control of such property is sufficient proof of ownership. *Crockett* v. *State*, 5 Texas Ct. App. 527; *Turner* v. *State*, 7 Texas Ct. App. 396; *Pippin* v. *State*, 9 Texas Ct. App. 269; *Alexander* v. *State*, 9 Texas Ct. App. 48.

It only remains for us to say, with regard to the charge of the court, that the objections urged to it are not tenable; it was a fair and full exposition of the law. With

regard to the evidence, suffice it to say that in our opinion it is amply sufficient to support the verdict and judgment. There is no error for which the judgment should be reversed, and it is therefore affirmed.

*Affirmed.*