## WHITE *v*. THE STATE.

[No. 5,841. Filed January 9, 1906.]

1. CRIMINAL LAW. — *Statutes.* — *Gambling.* — *Dice.* — *Indictment and Information.*—An indictment charging defendant with keeping and exhibiting for the purpose of gain a certain gambling device known as "dice" states a public offense under §2181 Burns 1901, §2086 R. S. 1881, providing that it shall constitute a crime for any person to keep or exhibit for gain "any gaming table * * * or any gambling apparatus, device, table or machine of any kind or description, under any denomination or name whatever." p. 97.

2. TRIAL.—*Instructions.*—*Burden of Proof.*—*Clerical Errors.*— Where the trial court in a misdemeanor case gave an instruction that the burden of proof was on "defendant" to prove every material allegation of the indictment beyond a reasonable doubt, but in other instructions the court properly instructed the jury that the State must establish its case, such clerical error is harmless. p. 100.

3. SAME.—*Instructions.*—*How Considered.*—Where the instructions considered as a whole fairly present the case to the jury, insubstantial errors are harmless. p. 101.

4. SAME.—*Instructions.*—*Criminal Law.*—*Consideration of Evidence.*—Where the trial court instructed the jury in a criminal case that the presumption of innocence prevails until the close of the trial, and the jury should weigh the evidence in the light thereof and reconcile the proof with such presumption if it could be done consistently with the law and the evidence and "your duty as jurors," such last clause does not constitute reversible error by placing on the jury a duty unauthorized by law. p. 101.

5. SAME. — *Instructions.* — *Clerical Omissions.* — An instruction charging the jury in a criminal case that it was for them to "determine what has been proved and what has been proved on the trial" is not harmful to defendant since the omission of the word "not" could not be misleading. p. 102.

6. TRIAL. — *Instructions.* — *Clerical Omissions.* — An instruction charging the jury in a criminal case that "this is a prosecution * * * charging the defendant, Henry White, keeping and exhibiting a gaming device" is not reversible because of the clerical omission of the word "with" preceding the word "keeping," no injury being shown.   p. 102.

7. SAME.—*Criminal Law.*—*Argument of Counsel.*—A statement by the prosecuting attorney in his argument to the jury that defendant's motion to quash the indictment had been overruled, while not legitimate argument, was justifiable in view of the fact that the counsel for defendant had stated in argument that if the State had proved the allegations of the indictment it was not entitled to a verdict because the indictment did not state an offense against the law, since for the purpose of the trial that question was foreclosed by the trial court's ruling on the motion to quash.   p. 103.

8. SAME.—*Criminal Law.*—*Argument of Counsel.*—A statement by the prosecuting attorney in his argument to the jury that "Lew Trees [a merchant for whom defendant was clerking] was related to Eph. Marsh and Jonas Walker," they being of counsel for defendant, is not reversible error though the evidence thereof was lacking, no injury being shown.   p. 104.

From Hancock Circuit Court; *Edward W. Felt,* Judge.

Prosecution by the State of Indiana against Henry White. From a judgment of conviction, defendant appeals. *Affirmed.*

*Binford & Walker* and *W. W. Cook,* for appellant.

*Charles W. Miller,* Attorney-General, *C. C. Hadley, L. G. Rothschild, W. C. Geake* and *Charles L. Tindall,* for the State.

WILEY, J.—Appellant has appealed from a judgment of conviction declaring him guilty of keeping and exhibiting a gaming device. His motions to quash the indictment, in arrest of judgment, and for a new trial were overruled. In his assignment he predicates error on the overruling of his motion to quash and his motion for a new trial.

Omitting the formal parts, the indictment charges that on a certain day appellant "did then and there keep and

exhibit, for the purpose of gain and to play games thereon and therewith, by which to win money, cigars, tobacco, beer and other property of value by and from divers persons who might be induced to wager money, cigars, tobacco, beer and other property of value thereon, a certain gambling device commonly known as dice, contrary," etc. The statute upon which the indictment is based is §2181 Burns 1901, §2086 R. S. 1881, which is as follows: "Whoever keeps or exhibits for gain, or to win or gain money or other property, any gaming table * * * or any gambling apparatus, device, table or machine of any kind or description, under any denomination or name whatever; * * * or allows the same to be used for any such purpose, shall be fined," etc.

Counsel earnestly contend that the indictment does not state a public offense. That portion of the statute quoted is certainly broad and comprehensive enough to cover almost any kind of a gambling device. The purpose of the statute is, and the evident intent of the legislature in passing it was, to remove as far as possible the temptation for gambling, and prevent the evils arising therefrom. It will be observed that the statute creates no absolute inhibition against keeping or exhibiting the contrivances, devices, etc., specified, except when they are kept for "gain, or to win or gain money or other property." Keeping or exhibiting such devices, etc., for gain, constitutes the statutory offense. The statute is so broad and sweeping that it includes "any gambling apparatus, device, * * * of any kind or description, under any denomination or name whatever." This language certainly covers and includes any kind of apparatus, table, device, etc., which is kept or exhibited for gain, or to win or gain money or other property. If the word "dice" may be classed or comes within the meaning of "any gambling * * * device," then it is embraced within the statute. The indictment charges that appellant

kept and exhibited a "certain gambling device commonly known as dice." This charge tenders an issuable fact within the meaning of the statute.

It is, however, urged by appellant's learned counsel that where a statute designates certain definite and specific things as unlawful, such as Jenny Lind table, roulette, faro, keno, wheel of fortune, etc., and contains a further inhibition in general terms, such general inhibition will be construed to include only games of a nature or kind similar to those specifically prohibited. This is upon the ground that the rule *ejusdem generis* applies. For this reason it is urged that under the specific language of the statute, whereby certain contrivances, devices, etc., are named, the general provision which embraces "any gambling apparatus, device, * * * under any denomination or name whatever," can not be construed to mean "dice." A number of cases are cited to support this contention, a brief review of which will suffice to show that they are not of controlling influence here.

In *Commonwealth* v. *Kammerer* (1890), 11 Ky. Law 777, 13 S. W. 108, the indictment charged that appellee did "unlawfully and feloniously set up, carry on and conduct a machine and contrivance used in betting, to wit: a game of oontz, played with dice and upon which money was won and lost." The statute under which he was indicted was in substance as follows: "Whoever, * * * shall set up, carry on or conduct, * * * a keno bank, faro bank, or other machine or contrivance used in betting, * * * shall be fined," etc. It was shown by the evidence that the game that was played was "craps" or "oontz." It was held that where a game of "oontz" is played with dice on a table or other surface, by bettors, it did not come within the meaning of the terms, "other machine or contrivance," as used in the statute. It was recognized in that case that dice are often resorted to and used for gaming, but to play "oontz" with dice upon a table or

other surface was not embraced within the words "other machine or contrivance used in betting." There is a wide difference between the Kentucky statute and the one under which this prosecution is waged.

In *State* v. *Hardin* (1863), 1 Kan. 474, it was held that a "pack of cards" was not a gambling device within the meaning of the statute which prohibited the keeping of specifically designated devices, adopted, devised and designed for the purpose of playing games of chance.

In *State* v. *Gilmore* (1889), 98 Mo. 206, 11 S. W. 620, it was held that ordinary playing cards and poker chips were not gambling devices within the meaning of the statute which prohibited the setting up and keeping of certain specific gambling devices, such as faro banks, roulette, keno, etc., and were not embraced within the expression "any kind of gambling table or gambling device."

*State* v. *Etchman* (1904), 184 Mo. 193, 83 S. W. 978, is not in point, for the only question there decided was that the indictment did not charge any crime defined by the statute.

In *Chappell* v. *State* (1889), 27 Tex. App. 310, 11 S. W. 411, appellant was indicted for keeping for the purpose of gaming "a table used for gaming, to wit, for playing a game with dice, commonly called craps," etc. While the indictment was held good because it came within the spirit and letter of the statute, the judgment of conviction was reversed, because the evidence showed that the table was an ordinary table, that the game played on it was "craps," and that such game had no relation to the table.

These authorities do not support appellant's contention, for they are not applicable to our statute and the facts charged in the indictment.

Appellant's position that dice are not gaming devices is not tenable. Webster defines dice as follows: "Small cubes used in gaming, or in determining by chance." We can conceive of no use to which dice can be put except for the

purpose of playing games or to determine by chance. In one state at least (Minnesota) dice are recognized as gaming devices, and are classed and prohibited under the same statute with other gaming devices. Thus in *State v. Shaw* (1888), 39 Minn. 153, 39 N. W. 305, dice, together with gaming tables, are referred to "as well-defined devices used in gambling."

In Missouri it was held that "craps" played with dice upon a table was a gambling device, and was prohibited under that clause of the statute which prohibited any kind of a gambling table or gambling device adapted, devised and designed for the purpose of playing games of chance for money. *State v. Rosenblatt* (1904), 185 Mo. 114, 83 S. W. 975.

The offense defined by our statute is keeping or exhibiting for gain, or to win or gain money or other property, any "gaming table    *    *    *    or any gambling apparatus, device, table or machine of any kind or description, under any denomination or name whatever    *    *    *    for the purpose of betting or gaming," etc. Having reached the conclusion that "dice" are gambling devices within the meaning of the statute, and the indictment having charged that appellant did keep and exhibit for the purpose of gain and to play games therewith, etc., a "certain gambling device commonly known as dice," we are clearly of the opinion that the indictment states a misdemeanor, as defined by statute, and is good as against a motion to quash.

Under the motion for a new trial, among other things, appellant bases error upon the court's giving certain instructions. By the fourth instruction the court told the jury that the burden was upon the "defendant" to prove every material averment of the indictment beyond a reasonable doubt. This, of course, was erroneous, but we must presume that the trial court by oversight or inadvertence used the word "defendant" when it intended to use the word "State." It was evidently a clerical error.

White *v.* State—37 Ind. App. 95.

In the following instruction the court fully instructed the jury that appellant was presumed to be innocent, and could not be convicted unless the State proved his guilt beyond a reasonable doubt.   The instruction further particularized by telling the jury what would be necessary for the State to prove to warrant a conviction, and covered every material averment of the indictment.   The sixth, seventh and thirteenth instructions so modified the fourth, and made so plain to the jury their duty, that we are satisfied appellant was not harmed by the use of the word "defendant" in the fourth instruction.

The fifth, tenth and eleventh instructions are criticised because they proceed upon the theory that keeping and exhibiting dice for gaming purposes and to win money or other property of value constitute an offense, within the meaning of the statute, while it is claimed by appellant that keeping and exhibiting dice, etc., are not included in the statute, and because the instructions do not say that such device was "adapted, devised and designed for gambling."   As to the first objection, we have disposed of that in what we have said as to the sufficiency of the indictment.   As to the second, the question is fully covered by the instructions when considered together.

In the fifteenth instruction the court told the jury that the presumption of innocence prevails until the close of the trial; that they should weigh the evidence in the light of such presumption, and reconcile the same with such presumption, if it could be done, "consistently with the law and the evidence   *   *   *   and your duty as jurors."   Objection to the latter clause was made, upon the ground that it places upon the jury "a duty which is not authorized by law."   No possible harm could come to appellant by the language quoted.

In the sixteenth instruction the jury were told that they were the exclusive judges of the evidence and the credibility

of the witnesses, and it was for them to "determine
5.   what has been proved and what has been proved on
     the trial." It is claimed that the instruction is
erroneous because of the omission of the word "not" between
"has" and "been" in the second use of the words. Of course
the court intended to say that it is the duty of the jury to
determine what has been proved and what has not been
proved, but for the clerical omission of the word "not" we
are clear that the jurors were not misled, and that they fully
understood what the court meant.

The first instruction simply stated to the jury that "this
is a prosecution   *   *   *   charging the defendant, Henry
     White, keeping and exhibiting a gaming device."
6.   The word "with," which should immediately pre-
     cede the word "keeping," is omitted, and the in-
struction is criticised for such omission. There is no merit
in this criticism. Considering the instructions as a whole,
as we must, they fairly state the law applicable to the facts
in the case, and we are not able to say that appellant was in
anywise prejudiced by them.

The only remaining question which counsel for appel-
lant have discussed, and to which they have devoted over
twenty pages of their brief, is the alleged misconduct of the
prosecuting attorney in his argument to the jury. The
record shows that the argument on both sides was not con-
ducted altogether within legitimate bounds. There was
much bitterness, feeling and vituperation injected into the
argument, and counsel did not at all times keep within the
record. Appellant excepted to many statements of the
prosecuting attorney, and moved to discharge the jury.
This motion was overruled and exceptions reserved. The
court sustained all but two of appellant's objections to the
several objectionable statements, and at the time instructed
the jury to disregard them. In its general instructions it
also referred to the matter, and told the jury that they
should determine the merits of the case solely upon the law
and the evidence. It would require too much time and

space to consider separately the many statements of the prosecuting attorney to which objections were made, and, in view of the fact that the court acted promptly and fairly at the time, we are satisfied that appellant was not prejudiced thereby.

The two statements which the court refused to interfere with, in view of the earnest and able argument of appellant's counsel, ought, in all fairness, to be considered. 7. During his closing argument the prosecuting attorney stated that the motion to quash the indictment had been overruled. This statement was not within the range of legitimate argument, and should not have been made. While, in a criminal case, the jury are the judges both of the law and evidence, they have nothing to do with the sufficiency of the indictment. That is a matter solely for the court. *Anderson* v. *State* (1886), 104 Ind. 467. This statement, however, was provoked by and in answer to an improper statement made in argument by one of appellant's counsel. In that statement counsel said in substance that if the State had proved the allegations in the indictment it was not then entitled to a verdict of conviction, because the indictment "did not state an offense against the law," for the reason that dice were not gaming devices within the meaning of the law, and that appellant could not be punished for exhibiting dice as a gaming device. When the trial court held that the indictment was good as against a motion to quash, it adjudicated, so far as that court was concerned, that it stated an indictable offense. It was the duty of both the State and appellant, for the purpose of the trial, to accept that adjudication as final, and appellant's counsel was not justified in saying to the jury what he did. Under these facts we are inclined to the view that the prosecuting attorney was justified in answering the statement as he did. It was the only effectual means of meeting and refuting the force of what appellant's counsel had said.

The remaining question relates to the statement of the prosecuting attorney that "Lew Trees was related to Eph. Marsh and Jonas Walker"—they being of counsel for defendant. Objection is urged to this statement, because there was no evidence of such relationship. It is proper to say that appellant was clerking for Lew Trees, and that it was in the latter's store where the alleged offense was committed. It may be conceded that this was an improper statement, but we are unable to see how it was hurtful. In *Morrison* v. *State* (1881), 76 Ind. 335, 343, the court said: "If, for every transgression of the prosecuting attorney beyond the bounds of logical or strictly legal argument, the defendant could claim a new trial, few verdicts could stand, and the administration of criminal justice would become impracticable." To the same effect is the case of *Combs* v. *State* (1881), 75 Ind. 215.

Upon the record, a correct conclusion was reached in the trial court, and we do not find any reversible error. Judgment affirmed.