MARY BRANNUM *v.* STATE OF INDIANA.

[No. 276S54. Filed September 16, 1977. Rehearing denied
November 28, 1977.]

*Lawrence O. Sells,* of Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney General, *Alembert W. Brayton,* Deputy Attorney General, for appellee.

PIVARNIK, J.—Appellant Mary Brannum was found guilty of the first degree murder of Louis Robinson on May 12, 1975, following a jury trial in Union Circuit Court. She was sentenced to life imprisonment.

Among the errors assigned the appellant alleges that the trial judge, by his conduct and demeanor along with certain improper rulings, improperly imposed himself into the proceedings and deprived her of a fair trial. An examination of the record supports this claim. The entire course of personal intervention in these proceedings by the trial judge, favorable to the state, was violative of due process. *Kennedy* v. *State,* (1972) 258 Ind. 211, 218, 280 N.E.2d 611, 615. Three specific incidents which demonstrate the judge's assumption of the role of an advocate will be examined here: (1) comments of the judge occurring during voir dire of prospective jurors; (2) comments coupled with an improper ruling at the time the defense called a witness; (3) the giving of a special instruction to the jury at a point where they were troubled during their deliberations. The first of these incidents is illustrative of the judge's attitude which permeated the entire trial; the second and third would have constituted reversible error in themselves. We accordingly reverse this conviction.

## I.

The first alleged prejudicial conduct of the trial judge occurred during voir dire of the prospective jurors. The prosecuting attorney was examining one Mr. Rodenberg. Rodenberg stated to the prosecutor that he could not sentence one to life imprisonment even after a verdict of first degree murder, and the prosecutor challenged him for cause. At this point, and in the presence of the other prospective jurors, the judge interjected:

Q. Mr. Rodenberg, do I understand you to be thinking this way—that if somebody was robbing your wife, putting her in fear, snatching her purse, and was armed with some dangerous weapon and your wife was with two of your children, and in the fracas and melee involved in robbing your wife, all three . . . everybody in your immediate family was killed, you would expect your friends here on this jury . . . you would be satisfied if they gave that person one to five? They found that person was guilty of murder while perpetrating a

felony and killing three members of your family and you's say, "fine" . . . if these friends and neighbors of your sitting here on the jury gave the fellow one to five years?

A. No.

Q. What would you expect? Would you want that fellow out three or four years after that happened . . . flying free—would you?

Lengthy rhetoric explaining the error committed by the court in this discussion with the prospective juror is hardly necessary. In *Kennedy* v. *State*, (1972) 258 Ind. 211, 226, 280 N.E.2d 611, 620-621, this court quoted Canon 8 of the Code of Judicial Conduct and Ethics and commented upon it:

> " 'A judge may properly intervene in a trial of a case to promote expedition, and prevent unnecessary waste of time, or to clear some obscurity, but he should bear in mind that his undue interference, impatience, or participation in the examination of witnesses, or a severe attitude on his part toward witnesses may tend to prevent the proper presentation of the cause, or the ascertainment of the truth in respect thereto.'
>
> "A jury of laymen will often have an awesome respect for the institution of the American trial judge. This can lead them to accord great and perhaps decisive significance to the judge's every word and intimation. It is therefore essential that the judge refrain from any actions indicating any position other than strict impartiality."

In the present incident, the prosecuting attorney had challenged the juror for cause and the court had only to sustain the challenge and excuse the juror. As a matter of fact, after his discussion with the juror he did just that. The judge was obviously disappointed at what appeared to him to be a weak position taken by this juror, which apparently conflicted with the judge's own sense of a juror's duty and responsibility. Some may find his opinion to be understandable and even commendable. However, he was in the position of an impartial presiding judge in a criminal action. Society was represented by two prosecuting attorneys, who were charged with the duty of bringing forth the evidence

and exhorting the enforcement of the criminal law by fixing guilt and punishment. It is the duty of the presiding judge to refrain from imposing himself and his opinions on the jury, so that they may impartially and fairly assess the evidence and the testimony and return a verdict accordingly.

## II.

The next incident involved the calling of Union County Sheriff George Boggs to testify. Boggs had custody of both appellant Brannum and a witness, Melvin Dean Burns. Burns and his common law wife, Lillian Griffin, were also charged with the murder of Louis Robinson and had previously pled guilty to manslaughter on a plea-bargain arrangement, receiving sentences of two to twenty-one years. It was disclosed that Sheriff Boggs had been discussing the case at length with witness Burns, attempting to influence Burns' testimony as a state's witness. Counsel for the appellant was advised of this by the prosecuting attorney in open court, during a recess while the jury was out. The judge found it necessary because of this problem to remove both appellant and the witness Burns from the custody of the local sheriff.

When witness Burns returned to the stand on cross-examination by the defense, he testified at length about his conversations with the sheriff. Burns indicated that the sheriff was attempting to influence him to testify in favor of the appellant, under circumstances which would indicate some concert between the appellant and Sheriff Boggs.

Following this testimony, appellant called Sheriff Boggs to the stand as a witness. The prosecutor made no objection. The judge himself, however, sua sponte, made a lengthy statement indicating that he would not permit Boggs to testify because of the separation of witnesses rule which had been imposed at appellant's request. Sheriff Boggs had been in and about the courtroom during the testimony of several witnesses. The judge then further stated:

"Also, the court takes judicial notice of the fact that when a witness, Melvin Dean Burns, was submitted to cross-examination by the defendant, that witness Burns stated that Mr. Boggs had talked to him about the case and about the testimony of various witnesses. Witness Burns, however, in answer to the defendant's questions on cross-examination, categorically denied that he was influenced in any way—that his testimony was influenced in any way by statements that were made to him by Mr. Boggs. Now it occurs to the court that if the defendant proposes to use witness Boggs to attack the credibility of witness Burns, that his, Boggs', statement did influence Burns' testimony, this could well place Mr. Boggs in jeopardy and encroach upon his constitutional rights against self-incrimination."

The judge was thus giving an appraisal of Burns' testimony to the jury and indicating an ultimate analysis of it. Appellant urges here that the court's statements and ruling presupposed that Sheriff Boggs had in fact tried to influence the testimony of Burns. What appellant wished to show by calling Boggs, however, was that Burns had lied about Sheriff Boggs attempting to influence Burns' testimony. In any event, appellant wished to put the matter before the jury so that they could assess the credibility of Burns and therefore make a proper appraisal of his entire testimony, which was very damaging to appellant.

The appraisal of the weight and value to be given to Burns' testimony was in the province of the jury, and the court thus committed error in commenting thereon. The issue of any self-incrimination of witness Boggs could have been properly raised and disposed of when and if it became apparent during his testimony. That alone might have had an effect upon the jury as to the credibility of either Boggs' or Burns' testimony. The judge's statements of his conclusions about Boggs' attitude and intent, and about Burns' testimony, could very well have had an influence on the jury in arriving at their verdict. The court refused defense counsel's request for an admonishment to the effect that he had no opinion as to the guilt or innocence of appellant nor as to the credibility of any of the witnesses, and that if he had indicated any opinions

the jury were to disregard them and decide the facts and the law for themselves.

Defense counsel's move to permit Sheriff Boggs to testify was on the grounds that Sheriff Boggs was not a regularly scheduled witness: there was no knowledge either of the witness or of the defense that his testimony would be required. The testimony of Burns had made the calling of Boggs a matter of importance, and the situation thus did not arise because of anyone's connivance or collusion. The court was therefore asked to exercise discretion and allow Boggs to testify, even though he had been present during testimony of other witnesses. His testimony would not relate to what was said by witnesses testifying in his presence, as its only purpose was the impeachment of Burns with reference to the alleged pressure being put on Burns regarding his testimony. It is well settled that it is within the discretion of the court to permit a witness to testify, even though such witness has violated the court's separation of witnesses order, in the absence of any connivance or collusion by the party calling the witness. *Butler* v. *State,* (1951) 229 Ind. 241, 97 N.E.2d 492; *Kelley* v. *State,* (1948) 226 Ind. 148, 78 N.E.2d 547; *Romary* v. *State,* (1945) 223 Ind. 667, 64 N.E.2d 22. It has also been held to be prejudicial error to refuse to permit such a witness to testify where the party calling the witness is not at fault for such violation. *McCoy* v. *State,* (1960) 241 Ind. 104, 170 N.E.2d 43; *Taylor* v. *State,* (1891) 130 Ind. 66, 29 N.E. 415; *State ex rel. Steigerwald* v. *Thomas,* (1887) 111 Ind. 515, 13 N.E. 35.

We feel the appellant had a right to call Sheriff Boggs to the stand, and the court further erred and abused his discretion by refusing to permit the testimony. This is particularly so in view of the fact that the prosecuting attorney made no objection, and the entire matter was initiated sua sponte by the court.

## III.

The final prejudicial act of the trial court concerns the giving of a special instruction to the jury in the middle of their deliberations. The case was submitted to the jury at three in the afternoon and the jury deliberated on a verdict until eleven-thirty that evening. Upon their return the next morning, it appeared that the jury had questions involving the instructions. The record does not tell us what these questions were, but it appears that the jury had difficulty in arriving at a verdict because of legal questions being discussed among them. The state and the defense agreed that the court would re-read, without comment, all of the instructions previously given and settled. The court then indicated to counsel that he was going to give to the jury, in addition to the regular instructions, a further instruction which he had prepared. This instruction was as follows:

> "The Court has previously instructed the jury that the crime charged in the amended affidavit consisted of two elements, that is, the attempted robbery and the killing. The Court further instructs you that the defendant, in final argument quoted the case of *State* v. *Hester* and then stated that the crime charged in the *Hester* case was felony murder. The case we are trying is felony murder and felony murder only as set out in the amended information. There are no lesser included offenses in the felony murder charge against Mary Brannum."

After the above instruction was given, the jury returned in twenty minutes with a verdict of guilty in the first degree, assessing a penalty of life imprisonment. Again, no objection or motion was made by the prosecuting attorney. Further, the prosecutor had the opportunity of closing argument at which time he could have answered the defense with regard to the *Hester* case, but the record shows that this was not done. The question is not the application of the *Hester* case to the rules concerning lesser included offenses of felony murder. The verdicts given to the jury at the outset included only first degree murder and not guilty. The question, rather, is one of the court's adding an instruction at this juncture

of the trial in which he commented on final argument of defense counsel, emphasizing one aspect of the decision the jury was to make. The court apparently emphasized the aspect he felt the jury was troubled about. This possibility seems to be borne out by the fact that the jury found the defendant guilty of first degree murder in a very short time after the special instruction was given, previously having been in deliberation for eight and one-half hours.

Pertinent to the court's duty to instruct a jury, Ind. Code § 35-1-35-1 (Burns 1975), provides in part:

> *Order of proceedings in trial of criminal cases—Instructions to jury.*—The jury being impaneled and sworn, the trial shall proceed in the following order:
>
> . . . .
>
> Fifth. The court must then charge the jury, which charge, upon the request of the prosecuting attorney, the defendant or his counsel made at any time before the commencement of the argument, shall be in writing and the instructions therein contained numbered and signed by the court. In charging the jury the court must state to them all matters of law which are necessary for their information in giving their verdict. If he present the facts of the case he must inform the jury that they are the exclusive judges of all questions of fact, and that they have a right, also, to determine the law.
>
> Sixth. If the prosecuting attorney, the defendant or his counsel desire special instructions to be given to the jury, such instructions shall be reduced to writing, numbered and signed by the party or his attorney asking them, and delivered to the court before the commencement of the argument. Such charge or charges of the court, or any special instructions, when so written and given by the court, shall in no case be orally qualified, modified or in any manner orally explained to the jury by the court. .

This statutory procedure was originally followed by the court in this case, and the instructions were settled by the court and with counsel for the parties. An examination of the instructions given indicates that the jury was amply and fully instructed on the law. Among them was a proper instruction that the jury was to consider all

the instructions together and as a whole, and not individually. Instructions given to the jury would be considered and construed as an entirety. *Bowers* v. *State,* (1925) 196 Ind. 4, 146 N.E. 818; *Baker* v. *State,* (1921) 190 Ind. 385, 129 N.E. 468; *White* v. *State,* (1906) 37 Ind. App. 95, 76 N.E. 554. By giving the special instruction sua sponte, however, the court emphasized this provision as one of primary importance to the jury, and tended to tell them what they ought to do. It is fundamental that a court should not, by an instruction, cast suspicion on any defense or evidence offered. *Aszman* v. *State,* (1889) 123 Ind. 347, 24 N.E. 123; *Albin* v. *State,* (1878) 63 Ind. 598; *Sater* v. *State,* (1877) 56 Ind. 378. Furthermore, the court erred in that it changed the order in which a trial is to proceed, contrary to Ind. Code § 35-1-35-1 (Burns 1975). The instructions had been settled and given to the jury. There was no claim by any of the parties that the jury had been improperly or incompletely instructed. As a matter of fact, the jury had already been instructed on the subject in question and the additional instruction did nothing more than re-emphasize it.

There were other incidents throughout the trial of which the defendant complains, in which the court imposed himself by interrupting defense witnesses and defense counsel. These incidents do not need to be recited here in view of the seriousness of the ones we have set out.

We must state again that in order for the criminal justice system to survive, our courts must be forums in which all parties can receive a fair and impartial trial. Impartiality insures that persons guilty of crimes be convicted and punished, and that innocence be likewise determined. The trial judge must thus preside over the case in a strictly impartial manner to be able to determine that the facts and the law are being properly presented and so reach a proper legal result. The conduct and strategy of the parties are to be left to them. The ultimate decision is to be left to the jury. We feel the trial judge did not properly

act in accordance with these principles here, and we reverse the conviction of appellant in order that she be given a new trial.

Judgment accordingly.

Givan, C.J., Hunter, J., Prentice, J., concur; DeBruler, J., dissents with opinion.

## DISSENTING OPINION

DeBruler, J.—The law most surely enjoins Indiana trial judges from making statements before the jury which subvert the fairness of the proceedings. *Kennedy* v. *State,* (1972) 258 Ind. 211, 280 N.E.2d 611. On the other hand, however, the judge conducting a jury trial has the affirmative duty to guide the trial away from the wasteful expenditure of time, the totally irrelevant, and the unnecessarily prejudicial. *Musick* v. *State,* (1976) 265 Ind. 207, 352 N.E.2d 717; ABA Standards, *Function of the Trial Judge* § 1.1(a) (Approved Draft, 1972). In attempting to fulfill the spirit of these requirements in the reality of trial, a judge is often called upon to conceal his human reaction to trial events. Those events may swiftly alter direction or intensity and call for a firm and unyielding ruling; in this fluidness the judge's words may reveal his personal sense of dismay, anger, or frustration. However, I agree that even given the tolerance which these circumstances dictate for judges who review allegations of trial judge misconduct, the law must not permit a trial judge to influence the jury's verdict with his personal views of relevant matter. If, for example, as in the *Kennedy* case, the judge in examining a witness clearly reveals that he does not believe the testimony of that witness, a substantial likelihood is created that the jury will adopt the judge's evaluation rather than arriving at its own independent evaluation. The propensity of a jury to do this arises from the respect and esteem with which a judge's office and experience are ordinarily held. The expression of such opinions by the judge is intolerable.

I cannot perceive that the conduct of the judge complained of here by appellant was so egregious as to significantly threaten the fairness of the trial. The hypothetical situation outlined by the judge in challenging the reluctant prospective juror was very different from the facts of the case on trial, and would not have been understood by those overhearing it as an expression by the judge of his opinion of appellant's guilt or of the punishment which should result if appellant were found guilty. Moreover, we do not know whether those prospective jurors who heard the statement actually served on the jury.

The statement of the judge in ruling that the defense could not call Sheriff Boggs as a witness did not convey to the jury the manner in which the judge may personally have evaluated Burns' testimony. And if the ruling excluding Boggs as a witness was itself error such error was harmless by the time the jury got the case. Appellant had hoped to impeach Burns' credibility with Boggs. By the time all the evidence was in, appellant had taken the witness stand, admitted that she had stabbed and killed the victim and confirmed the truth of Burns' testimony in most respects. Her interest in having the jury make a cautious and careful evaluation of the credibility of Burns had ebbed to a very low range.

The rest of the statements complained of were not shown by the record to have been made in a biased and partial manner and were done in exercise of the judge's legitimate authority to guide the trial.

Appellant should not prevail in this appeal.

NOTE.—Reported at 366 N.E.2d 1180.