Brian Allen HERO, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 45A03–0106–CR–172.

Court of Appeals of Indiana.

March 20, 2002.

Marce Gonzalez, Jr., J.J. Stankiewicz, Merrillville, IN, Attorneys for Appellant.

Steve Carter, Attorney General of Indiana, Cynthia L. Ploughe, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

ROBB, Judge.

Brian Hero appeals his conviction following a jury trial of criminal deviate conduct, a Class B felony. We affirm.

*Issues*

Hero raises two issues for our review, which we now restate as follows:

1. Whether the trial court properly submitted an additional instruction to the jury after the jury had begun deliberating; and

2. Whether there was sufficient evidence to support Hero's conviction of criminal deviate conduct.

*Facts and Procedural History*

The facts most favorable to the conviction are as follows. R.G. attended a New Year's Eve party at the home of Brian Hero and his wife. There were approximately twenty people at the party that night. As with many New Year's parties, the guests were drinking, and R.G., who had not consumed any alcohol in over nine months, drank five beers and one shot over the course of five hours. At approximately 1:00 a.m., R.G. fell asleep on the Heros' living room couch.

Sometime later, R.G. was awakened by the sound of her infant son crying and she felt something going in and out of her vagina. Hero was on top of her, and R.G. pushed him off. She then went to the kitchen to make a bottle for her crying son.

On January 10, 2000, R.G. filed a report with the police stating that Hero had raped her. Hero was subsequently charged with criminal deviate conduct, a Class B felony. The matter went to trial by a jury. During deliberation, the jury asked multiple times for clarification of when "penetration" occurs. The court eventually granted an additional instruction, reading such instruction as part of the entire list of original instructions, in open court, in the presence of both parties, and with no notation that it was a new instruction. The jury found Hero guilty of

criminal deviate conduct, a Class B felony, and he now appeals.

*Discussion and Decision*

### I. Submission of the Additional Jury Instruction

Hero asserts that the additional jury instruction was improperly given because it prejudiced his rights. We disagree.

#### A. Standard of Review

■ Generally, the manner of instructing the jury lies within the sound discretion of the trial court. *Lewis v. State*, 759 N.E.2d 1077, 1080 (Ind.Ct.App. 2001), *trans. denied.* A decision on the submission of jury instructions is only reversible upon a showing of abuse of that discretion. *Young v. State*, 696 N.E.2d 386, 389 (Ind.1998). A defendant is only entitled to a reversal if he affirmatively demonstrates that the instructional error prejudiced his substantial rights. *Hollowell v. State*, 707 N.E.2d 1014, 1023 (Ind. Ct.App.1999).

■ As a general rule, once jury deliberations commence, the trial court should not give any additional instructions. *Crowdus v. State*, 431 N.E.2d 796, 798 (Ind.1982). However, the court may modify its instructions when it is faced with an omitted instruction or an erroneous instruction, so long as it is fair to the parties. *Jenkins v. State*, 424 N.E.2d 1002, 1003 (Ind.1981).

#### B. Prejudicial Effect

■ The trial court properly complied with case law and provisions of the Indiana Code in deciding it was permitted to tender an extra instruction. There was a legal lacuna, and the jury desired to be informed as to a point of law arising in the case and not addressed by the instructions. *See* Ind.Code § 34–36–1–6 (where "the jury desires to be informed as to any point of law arising in the case … the informa-

tion required shall be given …"). *See also Jenkins*, 424 N.E.2d at 1003 (stating that a court may modify its instructions when it is faced with an omitted instruction). Because the jury question coincided with a legal lacuna present in the tendered instructions, the lower court had the authority to do more than just re-read the original instructions. *Riley v. State*, 711 N.E.2d 489, 492 (Ind.1999).

■ However, once the court decides to modify the instructions because it is faced with an erroneous or omitted instruction, the court must then determine whether or not the modification will prejudice the defendant. *See Jenkins*, 424 N.E.2d at 1003. ("[Modification] must serve to amend the final instructions by adding one previously omitted or correcting an erroneous one, and must be fair to the parties in the sense that it should not reflect the judge's view of factual matters.").

The trial court in *Graves v. State* was held to have erred "by providing the jury with an additional instruction and failing to contemporaneously re-read the entire set of final instructions." 714 N.E.2d 724, 727 (Ind.Ct.App.1999). However, trial courts have been correct when they read the additional instruction together with the original set. *See Durden v. State*, 406 N.E.2d 281 (Ind.Ct.App.1980) (affirming the trial court's reading of supplemental instructions to the jury in conjunction with a re-reading of all the instructions). *See also Downs v. State*, 656 N.E.2d 849, 853 (Ind.Ct.App.1995) (where the lower court provided additional instruction to the jury and, by agreement of the parties, did not re-read all of the instructions, the Court of Appeals affirmed, but noted that "[t]he better procedure would have been for the trial court to reread all of the instructions at the same time the supplemental instruction was read to the jury."). What distin-

guishes *Downs* from *Graves* is that in *Downs* the procedure of reading the additional instruction together with the original set was specifically waived by Downs, whereas in *Graves* it was not.

In this case, the trial court read the additional instruction in the course of re-reading all prior instructions. The record reveals that the trial court was very aware of the danger of prejudice to Hero in reading only the new instruction to the jury. The trial court judge specifically stated this concern:

> I'm going to have the jury instructions redrafted in their entirety and renumbered with this instruction inserted at an appropriate point in the instructions so as not to draw any undue emphasis to it. No reference will be made to the jury, no specific reference will be made to the jury regarding this additional instruction rather than simply be advised that the Court has considered their notes and comments and in response will re-read the instructions. After that, they will be sent back to deliberate.

R. 486–87.

It may be true that when the trial court gives a special instruction on one particular issue, it tends to emphasize that issue as being of primary importance and tends to tell the jury what it ought to do. *Wallace v. State*, 426 N.E.2d 34, 36 (Ind.1981). However, as evidenced by the trial court judge's comments, the court was aware of this possible danger, and took all precautions to avoid such an emphasis. When the new instruction was added, it was one of nineteen instructions. It was not inserted first or last—a position where it would stand out—but fourth, a natural and logical position amongst the other instructions.

 Finally, we look at the possibility of a mistrial if the jury continued to be uncertain on the point of law. "When it is apparent to the trial court that a jury cannot agree upon a verdict after ample time for deliberation, there exists good cause to discharge the jury." *Tincher v. Davidson*, 762 N.E.2d 1221, 1226 (Ind. 2002). While declaration of a mistrial is generally within the discretion of the trial court, trial courts should facilitate and assist jurors in the deliberative process in order to avoid mistrials. *Id.* Also, mistrial is a most extreme remedy, only to be invoked when no other course of action can rectify the situation. *Id.* (Citing *Kavanaugh v. State*, 695 N.E.2d 629, 632 (Ind. Ct.App.1998)).

*Tincher* was a comparative fault case where the trial court declared a mistrial due to repeated calculation inconsistencies in the verdict forms returned by the jury. When the jury was sent to deliberate the case, the trial court provided verdict forms—one finding for the plaintiff and one finding for the defendant—and a "General Comparative Fault Verdict Form" (calculation form), which explained comparative fault calculations and which was meant to guide the jury through such calculations. Twice, the jury returned a general verdict for the plaintiff in the amount of $150,000.00. Twice, the calculation form showed the defendant's fault to be 100%. Twice, the jury came up with inconsistent calculations on the form. After the first inconsistent calculation, the court sent the jury back with new forms, informing it that there were inconsistencies, and ordering the jury to read through the verdict forms and reconsider the calculations. This was to no avail, as the jury changed its calculations from the first calculation form, but still came up with inconsistent findings.

In actuality, there was no problem with the general verdict. This was just a jury that was not very adept at mathematical calculation. A unanimous verdict was

reached, but the jurors did not do the math correctly.

The Supreme Court vacated the order granting a mistrial, and ordered a judgment entered for the plaintiff in the amount of $150,000.00, finding "that the trial court may have, but was not required, to make further attempts . . . to assist the jury in achieving complete consistency." *Tincher*, 762 N.E.2d at 1226.

*Tincher* sets out a policy under which juries can be made to work better with the non-prejudicial help of the court. The case shows that assisting the jury in basic problems of understanding is appropriate action for a trial court to take. In the case at bar, the jury had a problem with its understanding of "penetration." This was a basic problem of comprehension, and the court is allowed to assist the jury in its understanding.

Because the court took such care in providing the additional, clarifying instruction, and because the court's actions were consistent with the reasoning in *Tincher*, we can find no abuse of the broad discretion it has in such matters.

### C. *Allen* Charge

 Hero also contends that the additional instruction amounts to an impermissible *Allen* charge. An *Allen* charge is an instruction given to urge an apparently deadlocked jury to reach a verdict. *Taylor v. State*, 677 N.E.2d 56, 63 n. 5 (Ind.Ct. App.1997), *trans. denied; Clark v. State*, 597 N.E.2d 4, 7 (Ind.Ct.App.1992), *trans. denied*. Such additional instructions are closely scrutinized to ensure that the court did not coerce the jury into reaching a verdict that is not truly unanimous. *Clark*, 597 N.E.2d at 7.

The question we must ask, then, is whether the trial court believed that the jury was deadlocked. If so, the decision to give the additional instruction must be looked at with a closer scrutiny.

Once the court had decided to give an additional instruction, it called the two sides together and explained the situation. Over the course of the discussion, the judge said, "without more, I don't believe this jury can reach a verdict." R. 483. When viewed in a vacuum, that statement may lead one to feel that the judge believed there was a deadlocked jury.

However, we must look at the context of a statement to determine its meaning. The line quoted above follows a conversation about how "under the facts of this case, we have the proverbial gap in the instructions because this jury cannot get passed [sic] [it.]" *Id.* What the judge says a few lines later about the jury not being able to reach a verdict should be considered in reference to this statement about the gap in the law.

What the trial court judge was saying was that the gap in the law here was a crucial one, and not to bridge that gap is to leave the jury to decide for itself what the law is. The additional instruction is used to get the jury past an impasse. The court believed not that the jury was deadlocked, but that it was confused as to what the law was. The court believed that further clarification was appropriate, if not absolutely necessary. As to specific references to a deadlock, the court mentions the inability to reach a verdict only once, while mentioning multiple times the confusion of the jury and the fact that another instruction would relieve that confusion. *See* R. 486–88. "Deadlock" never entered into the court's vocabulary here.

Further, it is not necessarily the case that, because there were five hours of deliberation before the jury asked for more clarification, it must hold true that the jury was arguing all that time on the point for which they demanded clarification. That

is not necessarily the case. On the contrary, just the opposite may be true. The record of this case shows opposing testimony from either side on some crucial points. Because the jury was deliberating for such a duration, a reasonable person could have believed that they were arguing about the testimony and the true state of affairs, and that they asked for more clarification when the issue arose during deliberation. There are no grounds to believe that the only point of contention for the five hours of deliberation was the definition of penetration, or that the jury was deadlocked as to whether penetration occurred. Also, to find that a jury was deadlocked merely because of the length of deliberation is dangerous. To enter such a judgment is to start down a slippery slope of interpreting, without basis, every action or non-action of the jury.

The court believed the jury was confused as to a point of law. The judge stated so numerous times. Because the trial court did not believe that the jury was deadlocked, the tender of the additional jury instruction will not be viewed with the closer scrutiny of an *Allen* charge.

The additional instruction given by the trial court was intended to cover a gap in the law left by the original instructions. When the court issued this new instruction, it did so with an awareness of the danger of prejudice to the defendant. The court took that into consideration and only read the new instruction as part of a long list of instructions. This did not have a prejudicial effect on Hero and it was not an abuse of discretion. Finally, because the court did not feel that the jury was deadlocked, there is no need to look at the modification with closer scrutiny.

## II. Sufficient Evidence

Hero contends that there was insufficient evidence to support his conviction for criminal deviate conduct, a Class B felony. We disagree.

### A. Standard of Review

In reviewing a sufficiency of the evidence claim, the court neither reweighs the evidence nor assesses the credibility of witnesses. *Brasher v. State*, 746 N.E.2d 71, 72 (Ind.2001). The reviewing court looks to the evidence most favorable to the verdict, and the reasonable inferences therefrom. *Id.* The court must affirm the conviction if there is probative evidence from which a reasonable person could have found the defendant guilty by a reasonable doubt. *Id.*

### B. Evidence of Criminal Deviate Conduct

The offense with which Hero was charged is defined by statute as follows:

A person who knowingly or intentionally causes another person to perform or submit to deviate sexual conduct when: (1) the other person is compelled by force or imminent threat of force; (2) the other person is unaware that the conduct is occurring; or (3) the other person is so mentally disabled or deficient that consent to the conduct cannot be given; commits criminal deviate conduct, a Class B felony.

Ind.Code § 35–42–4–2. Further, " '[d]eviate sexual conduct' means an act involving: (1) a sex organ of one person and the mouth or anus of another person; or (2) the penetration of the sex organ or anus of a person by an object." Ind.Code § 35–41–1–9.

R.G. testified that she was asleep and, upon waking up, felt something going in and out of her vagina. She looked up and saw Hero on top of her. She heard Hero saying, "you like it, you like it." R. 45. From this testimony, and reasonable inferences drawn therefrom, a reasonable person would be able to find the elements of

the crime charged. This was "deviate sexual conduct"—the penetration of R.G.'s sex organ by an object. R.G. was unable to identify the specific object which penetrated her, but believed it to be either Hero's penis or his fingers. Hero himself admitted to penetrating her with his fingers. Also, it fits the elements of "criminal deviate conduct" because the evidence demonstrates that Hero was doing it intentionally, and R.G. was unaware of what was going on, as she was asleep at the time.

The jury at trial found this testimony convincing, and a court may impinge on the jury's function to judge the credibility of a witness only within the limits of the "incredible dubiosity" rule. *White v. State,* 706 N.E.2d 1078, 1079 (Ind. 1999). That rule is only appropriate where the court has confronted inherently improbable testimony or coerced, equivocal, wholly uncorroborated testimony of incredible dubiosity. *Id.*

No such improbable testimony exists in this case. The evidence most favorable to the verdict reveals that R.G. experienced a traumatic event. A reasonable person could find this trauma to explain any delay in coming forward, and any slight inconsistency in her statements, facts Hero points to in attacking her credibility. The testimony is not wholly improbable. There is no basis for us to impinge on the province of the jury, for we have no basis for the application of the incredible dubiosity rule.

A reasonable person, based on the evidence most favorable to the verdict, could find Hero guilty beyond reasonable doubt.

### Conclusion

There existed in the original tendered jury instructions a gap in the law, or a legal lacuna. As such, the trial court was authorized to do more than just re-read the instructions to the jury, as long as the action it took was a fair to the parties. The court realized the dangerous ground on which it tread, considering the possibility of prejudice to the defendant in adding another instruction. Having taken this into account, the trial court decided on a reasonable and fair course of action. Entering an additional instruction for the jury as part of re-reading all of the original instructions was not an abuse of discretion.

A reasonable person could find Hero guilty beyond reasonable doubt based on the evidence presented. In this case, the evidence most favorable to the decision, and the inferences drawn therefrom, support a conviction.

Affirmed.

KIRSCH, J., and SULLIVAN, J., concur.