# FOR PUBLICATION

ATTORNEY FOR APPELLANT:

**JIM BRUGH**
Logansport, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**NICOLE M. SCHUSTER**
Deputy Attorney General
Indianapolis, Indiana

**FILED**

Aug 27 2012, 9:44 am

*[signature]*

**CLERK**
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| ROBERT DOWELL, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 09A05-1201-CR-36 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE CASS SUPERIOR COURT
The Honorable Douglas B. Morton, Senior Judge
Cause No. 09D02-1103-FA-2

**August 27, 2012**

**OPINION - FOR PUBLICATION**

**MAY, Judge**

Robert Dowell appeals his conviction of Class A felony robbery resulting in serious bodily injury.[1]  He argues the trial court erred when it gave the jury an additional instruction after deliberations began, but did not call the jury back into the courtroom or re-read the rest of the instructions.  We reverse and remand.

## FACTS[2] AND PROCEDURAL HISTORY

The State charged Dowell with robbery resulting in serious bodily injury, a Class A felony, after he, his girlfriend Mindy Boehme, and Dustin Rush beat and robbed Roman Nusbaum.  The three saw Nusbaum in a Logansport tavern.  Nusbaum appeared drunk and was carrying a large amount of cash.  The three went to another bar, where they drank, smoked methamphetamine, and developed a plan to rob Nusbaum.  Boehme would lure Nusbaum from the tavern and take him to an agreed-on location, where the two men would rob him.

Boehme returned to the tavern and found Nusbaum.  They left the tavern together, and Boehme drove him to the designated location.  Dowell and Rush removed Nusbaum from the car and beat him.  Dowell hit Nusbaum with a baseball bat.  Rush took Nusbaum's money, then met Boehme at Rush's home.  There Dowell and Rush helped Boehme remove Nusbaum's blood from her car.  Dowell and Rush placed their clothing in a bag for disposal and threw away their shoes.

---

[1]  Ind. Code § 35-42-5-1.

[2]  We remind the State that a Statement of Facts in an appellate brief "shall describe the facts *relevant to the issues presented for review*."  Ind. Appellate Rule 46 (emphasis added).  The State's Statement of Facts describes Dowell's offense in great detail, but is devoid of any facts relevant to the only issue presented for our review.

The trial court instructed the jury as to the elements of robbery, but there was no instruction concerning accomplice liability. The robbery instruction read in part:

> Before you may convict the Defendant, the State must have proved each of the following beyond a reasonable doubt:
> 1. The Defendant, Robert Dowell
> 2. knowingly or intentionally
> 3. took property from Roman Nusbaum
> 4. by using or threatening the use of force on Roman Nusbaum
> 5. and the commission of elements 1 through 4 resulted in serious bodily injury to Roman Nusbaum.

(App. at 20.)

> After deliberations began, the jury foreman gave the bailiff a handwritten note:

> The jurors would like additional definition to know:
> To meet the qualifications for element 5, would the defendant have had to directly caused [sic] the injuries with the baseball bat or could he have just been directly involved in the incident (i.e. holding the victim,, but not striking the victim with a weapon.)? [sic]
> To meet the qualifications for element 3, would the defendant have had to have explicitly taken the property off of the victim's person or could he have just been directly involved in it?

(*Id*. at 60.)

The trial court responded by returning the note with the handwritten statement "Indiana law provides that a person who aids another person to commit an offense commits that offense." (*Id*.) The judge did not call the jury back into the courtroom, stating that procedure would be "unduly cumbersome." (*Id*. at 53.) Nor did he re-read all the instructions including the new one on accomplice liability.

**DISCUSSION AND DECISION**

Ind. Code § 34-36-1-6 provides:

3

> If, after the jury retires for deliberation:
> (1) there is a disagreement among the jurors as to any part of the testimony; or
> (2) the jury desires to be informed as to any point of law arising in the case;
> the jury may request the officer to conduct them into court, where the information required shall be given in the presence of, or after notice to, the parties or the attorneys representing the parties.

But once deliberations commence, the trial court should not give additional instructions. *Crowdus v. State*, 431 N.E.2d 796, 798 (Ind. 1982). This rule prevents the trial court from giving special emphasis, inadvertent or otherwise, to a particular issue in the case, and thus avoids the possibility that the additional instruction might tell the jury what it ought to do concerning that issue. *Id*.

When confronted with a question from a jury that has commenced deliberation, the trial judge must respond in a manner that accords with the legal requirements for final instructions and is fair. *Jenkins v. State*, 424 N.E.2d 1002, 1003 (Ind. 1981). The "path is extremely hazardous" for the court that would depart from the body of final instructions and do other than reread the final instructions in responding to jury questions. *Id*. Such a departure will be warranted in only the most extreme circumstances. *Id*. It must serve to amend the final instructions by adding a necessary one previously omitted or correcting an erroneous one, and must be fair to the parties in the sense that it should not reflect the judge's view of factual matters. *Id*.

It is only when the jury question coincides with an error or "legal lacuna" in the final instructions that a response other than rereading from the body of final instructions is permissible. *Id*. A "lacuna" is an "empty space or missing part; a gap." *Downs v. State*, 656

4

N.E.2d 849, 852 n.4 (Ind. Ct. App. 1995) (quoting The American Heritage Dictionary of the English Language 732). If the trial court decides to give an additional instruction because the question relates to a "legal lacuna," the trial court must reread all of the instructions so that the additional instruction will not be over-emphasized. *Graves v. State*, 714 N.E.2d 724, 726 (Ind. Ct. App. 1999).

In *Graves*, we addressed a situation almost identical to that in the case before us. There, we reversed and remanded for a new trial when the trial court gave the jury an accomplice liability instruction after deliberations had begun, but did not re-read all the final instructions. The jury sent a note to the court asking: "Did [Graves] have to personally take the property to be guilty of robbery?" *Id*. at 725. Counsel for Graves told the court he believed the proper procedure would be to re-read the entire set of final instructions, including any additional instructions. Instead, as in the case before us, the court read to the jury only an instruction on accomplice liability. Graves was convicted of robbery and other offenses.

In *Graves*, both parties agreed the jury's question concerned a point of law and the trial court complied with the mandates of Ind. Code § 34-36-1-6. Nevertheless, we noted, our Supreme Court has long recognized that once jury deliberations commence, the trial court should not give any additional instructions. *Id*. at 726 (citing *Crowdus,* 431 N.E.2d at 798). We further noted the "one limited and narrow exception" to that "strict rule," *id*.: that when the jury's question coincides with an error or "legal lacuna" in the final instructions, the trial court may respond in a manner other than simply re-reading the entire set of final

5

instructions. *Id*. at 726. "This prohibitive rule exists to protect against giving special emphasis to a particular issue and to guard against the possibility that the additional instruction might suggest to the jury a resolution to an issue." *Id*. (citing *Crowdus,* 431 N.E.2d at 798).

In *Graves*, as in the case before us, the jury sent a note asking specifically about the charge of robbery and then, after receiving the additional instruction on accomplice liability, returned with a verdict of guilty as to that charge. As we explained in *Graves*:

> In this situation the potential for prejudice is great. The evidence reveals that Graves' companions searched Jones' house and removed items from the residence, but it does not show that Graves actually removed any of the objects from the house.[3] Therefore, when the trial court instructed the jury on accomplice liability, without re-reading the entire set of final instructions, it not only placed special significance on the particular issue of Graves' culpability with regard to the charge of robbery, but also the lone, additional instruction suggests a resolution to the jury's predicament evidenced by their note. The jury was instructed as follows: "[A] person who knowingly or intentionally aids, induces or causes another person to commit an offense, commits that offense."

*Id*. at 726-27 (footnote added).

We found the *Graves* procedure gave "the type of improper emphasis that the rule of *Crowdus* aims to alleviate." *Id*. at 727. Even though there was a "legal lacuna" in the form of the omitted instruction on accomplice liability such that the trial court properly could

---

[3] Similarly, in the case before us it appears there was no evidence Dowell directly took the money from Nusbaum. In its Statement of Facts, the State asserts "The two [Dowell and Rush] took Nusbaum's money" when they beat Nusbaum, (Br. of Appellee at 3), but the pages of the transcript to which the State directs us do not support that statement. One reference is to Boehme's testimony that she was told days after the robbery that *Rush* "ended up with all the money." (Tr. at 187.) The other reference is to testimony by an acquaintance of Rush that *Rush* showed him the money that had been stolen from Nusbaum. (*Id*. at 266.) We admonish the State to refrain from so misrepresenting the record.

provide the jury with the additional instruction, we held the trial court committed reversible error because it did not re-read the entire set of final instructions contemporaneously with the giving of the additional instruction.[4]  *Id.  Cf. Hero v. State*, 765 N.E.2d 599, 603 (Ind. Ct. App. 2002), *trans. denied*, where we noted "[i]t may be true that when the trial court gives a special instruction on one particular issue, it tends to emphasize that issue as being of primary importance and tends to tell the jury what it ought to do."  In *Hero*, the trial court was aware of that danger, and "took all precautions to avoid such an emphasis.  When the new instruction was added, it was one of nineteen instructions.  It was not inserted first or last - a position where it would stand out - but fourth, a natural and logical position amongst the other instructions."  *Id.*

In *Brannum v. State*, 267 Ind. 51, 57, 366 N.E.2d 1180, 1184 (1977), our Supreme Court characterized as a "prejudicial act of the trial court" the "giving of a special instruction to the jury in the middle of their deliberations."  After eight and one-half hours of deliberation, it appeared the jury was having difficulty arriving at a verdict "because of legal questions being discussed among them."  *Id.*, 366 N.E.2d at 1184.  The record on appeal did not reflect what those questions were.  The State and the defense agreed the court would re-read the instructions previously given.  The trial court then indicated it was going to give to

---

[4]  The State acknowledges *Graves,* but appears to argue the *Graves* rule does not apply to the case before us because of our Supreme Court's statement in *Ronco v. State*, 862 N.E.2d 257, 259 (Ind. 2007) that "[u]nder our recently adopted jury rules, Indiana trial courts have greater leeway to facilitate and assist jurors in the deliberative process, in order to avoid mistrials."  (Internal quotation omitted).  We decline to hold that such greater "leeway" now permits a trial court to subject a defendant to a "prejudicial act of the trial court" in the form of the "giving of a special instruction to the jury in the middle of their deliberations," *Brannum*, 267 Ind. at 57, 366 N.E.2d at 1184, or to the "great" potential for prejudice we noted in *Graves*, 714 N.E.2d at 726.

7

the jury a further instruction it had prepared, which instruction addressed a decision Brannum's counsel quoted in final argument. Our Supreme Court held the additional instruction was error, not because of its content about the decision counsel quoted, but

> the question, rather, is one of the court's adding an instruction at this juncture of the trial in which he commented on final argument of defense counsel, emphasizing one aspect of the decision the jury was to make. The court apparently emphasized the aspect he felt the jury was troubled about. This possibility seems to be borne out by the fact that the jury found the defendant guilty of first degree murder in a very short time after the special instruction was given, previously having been in deliberation for eight and one-half hours.

*Id.* at 57-58, 366 N.E.2d at 1184. By giving the special instruction *sua sponte*, "the court emphasized this provision as one of primary importance to the jury, and tended to tell them what they ought to do." *Id*. at 59, 366 N.E.2d at 1185.

In the case before us, as in *Graves*, the jury was apparently not prepared to conclude its deliberations until its question was answered. The court gave it the additional instruction on accomplice liability without re-reading the rest of the instructions, and the jury then returned a guilty verdict. That procedure gave that instruction "the type of improper emphasis that the rule of *Crowdus* aims to alleviate." *Graves*, 714 N.E.2d at 727, because the trial court did not re-read the entire set of final instructions contemporaneously with the giving of the additional instruction. *Id*. As such an additional instruction tended to "emphasize that issue as being of primary importance and . . . to tell the jury what it ought to do," *Hero*, 765 N.E.2d at 603, we must reverse and remand for a new trial.

Reversed and remanded.

KIRSCH, J., and NAJAM, J., concur.