## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Dec 08 2016, 9:05 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Scott L. Barnhart
Brooke Smith
Keffer Barnhart LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Angela N. Sanchez
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Maximilian Spiegel,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

December 8, 2016

Court of Appeals Case No.
49A02-1604-PC-773

Appeal from the Marion Superior Court

The Honorable Anne Flannelly, Magistrate

Trial Court Cause No.
49G04-1108-PC-60510

**Bailey, Judge.**

# Case Summary

Appellant-Petitioner Maximilian Spiegel ("Spiegel") appeals the denial of his petition for post-conviction relief, following his conviction for Child Molesting. He presents the issue of whether he was denied the effective assistance of trial counsel. We affirm.

# Facts and Procedural History

The relevant facts were recited by a panel of this Court on direct appeal, as follows:

> In April 2011, eighteen-year-old P.L. wrote a letter to her older sister C.H., alleging that P.L. had been molested by "Uncle Max" since she was in first grade and that the abuse had just recently stopped. C.H. showed the letter to her mother, who then telephoned her sister, Spiegel's wife. Spiegel was referred to as "Uncle Max." Spiegel also spoke to P.L.'s mother during that call, was crying, was extremely upset, and repeatedly threatened to kill himself, but he did not deny P.L.'s allegations.

> P.L.'s mother then informed P.L.'s father, J.L., of the allegations. J.L. had previously been convicted of and incarcerated for molesting his step-daughter, C.H. J.L. telephoned Spiegel, who initially denied the allegations. Subsequently, though, Spiegel stated that he "did do it" and was "sorry for what he had done."

> At the time of P.L.'s allegations, C.H. worked for the Indiana Department of Child Services. Spiegel telephoned C.H. several

times beginning in May 2011. He inquired about DCS procedures and what would happen next, said he would admit what he had done, and apologized. During that time, Spiegel also sent several text messages to C.H. In the texts, Spiegel said he had "hurt everybody so bad[ly]," Exh. 9; apologized; and said he was in three kinds of therapy. And in June, Spiegel asked C.H. to encourage her mother and sister not to press criminal charges. He offered to make "retribution in the form of gifts" such as "paying for college or buying a vehicle for P.L."

The State charged Spiegel with two counts of child molesting, as Class A felonies, and one count of sexual misconduct with a minor, as a Class B felony. The court held a jury trial on July 2, 2012. P.L. testified that she could not estimate how many times Spiegel had molested her, but she testified that it began when she was in first grade and continued for years. For example, she gave details of two occasions when she was seven years old when Spiegel blindfolded her and forced her to perform oral sex on him in exchange for candy. She also described an occasion when she was in eighth grade in which Spiegel picked her up on the pretense of taking her to buy tennis shoes as a reward for her team winning a championship. They stopped at his house, and he asked her to come in. He turned the television on for her, and pornography was playing. He left the room for a couple of minutes, and, when he returned, he pulled his penis out. She said she did not feel well, but he prayed over her and then made her perform oral sex on him. Finally, P.L. described a particular occasion when she was playing Barbie dolls with her cousin at Spiegel's house when Spiegel called to her from his bedroom. P.L. went to the bedroom and found Spiegel lying on the bed with his penis exposed through the zipper of his jeans. He stood and instructed her to kneel and had her perform oral sex on him.

Spiegel also testified at trial. The prosecutor asked whether he knew why his family believed P.L.'s allegations, and Spiegel answered that he did not know. In response, the prosecutor

commented, "You're a good liar." The trial court sustained Spiegel's objection and request to strike, and when he requested that the court admonish the jury, the trial court stated, "so admonished." The trial court denied Spiegel's request for a mistrial."

Later, in its rebuttal to closing argument, the State made the following comment: "If you decide not to believe P.L., you go back and deliberate and when you're done you say, [']We believed her but we needed more evidence,['] we might as well just tell our children to just take it and shut up because that's what you'll be saying." Spiegel objected on the ground that it was improper to "argue about … the effect on the community[.]" The trial court responded that the statement was made during closing argument and was not evidence, overruling the objection.

Subsequently in closing argument, the State referred to P.L.'s father, who had previously been convicted of child molesting, had gone to prison, and had been "set free in prison because it changed his life when he went to prison" and "healed" him. Then, referring to Spiegel, the prosecutor said, "That's what we're asking for the defendant. We're asking you to send a message that he can live his life differently." The trial court overruled Spiegel's objection. Finally, the prosecutor also said, "You can't be set free by hiring an attorney to get you off when you know you've done wrong." The trial court sustained Spiegel's objection and request to strike, and the prosecutor then stated, "Oh, no; he has a right to counsel. Absolutely. I would never want to do this without an attorney sitting over there."

During deliberations, the jury sent two questions to the trial court:

1. Did the molestation have to occur between July 1999 and June 2000 or (Rule/Instruction 5a) could the molestation occur at any time prior to her turning 14.

2. Define "on or about." How much time can be added to the time frame July 19, 1999[,] and June 18, 2000.

Appellant's App. at 101. The trial court discussed the appropriate response with the parties. Spiegel initially objected "to the entire process" on the ground that there was no difference between the evidence at trial and the charging information[1] and, therefore, an additional instruction was neither necessary nor appropriate. The trial court noted the objection for the record but did not rule on it. Initially, the trial court did not agree with the State that there was a difference between the evidence and the charging information. However, after further discussion, the trial court concluded that there was a difference and that an additional instruction was necessary. The court then determined the language to be used in answering the jury questions and discussed the method of communicating that to the jury:

The Court: You want me to tell them there's a new instruction when they come back out or do you just want to give it to them without reading all this?

[State]: I would defer to [defense counsel] and what he feels comfortable with.

---

[1] At trial P.L. testified to multiple incidents of abuse by Spiegel spanning several years. At the close of evidence, the State dismissed two counts, leaving only one count that charged Spiegel for molesting P.L. over a span of dates when she was approximately seven years old. Spiegel argued to the trial court that any confusion occasioned by the jury regarding dates, which was the basis for the jury question, arose after the State dismissed the other two counts and, therefore, was the State's own fault.

[Defense]: Judge, I think – I think we add a new instruction, we give them their instructions and –

The Court: Let them go back?

[Defense]: Let them go back.

The Court: Okay. Let's make copies. When they come out –

[State]: Not read them to them? Is that what you're saying, you don't need them read to the jurors?

The Court: I don't need them read to the jurors. I mean, as long as they have the instruction.

[State]: And as long as they know that there's a new instruction in there?

The Court: I'm just going to say we've reviewed your question and we've come to a decision, all parties, concerning an answer to your question or questions. There's an additional 5B1 instruction in your packet of which [sic] you were just given. This becomes part of your final – this becomes your preliminary instructions additional [sic]. Please go back and deliberate. Okay?

[Defense]: That procedure's fine with me.

[State]: Fine with the State.

The Court: Okay? (court confers with staff.)

[Defense]: Well, well –

The Court: You said that's okay. Given [sic] them a copy of the new instruction –

[Defense]: The new – the instructions. I think the issue is handing them this instruction by itself is drawing – is the drawing attention that I had concern about. Telling the jurors here's the instruction, you put it back in your packet, that's – that's the drawing attention that I'm concerned about. I think – I think they – they should be – the instructions should be inserted and they should be given all the instructions.

The Court: (Court confers with staff.) All right, we'll just make copies and reinsert them.

JURY RETURNS TO THE COURTROOM

The Court: . . . In response to your question, the Court responds as follows: There is an additional instruction in your Court's preliminary instruction booklet number 5A1. Continue to deliberate. Good luck.

After deliberating further, the jury found Spiegel guilty of child molesting, as a Class A felony. The trial court entered judgment of conviction and sentenced Spiegel accordingly.

*Spiegel v. State*, No. 49A02-1208-CR-687, slip op. at 2-6, (Ind. Ct. App. April 18, 2013). (transcript citations omitted.)

[3] Spiegel appealed, raising two issues: whether the prosecutor's statements made during cross-examination and closing argument constituted prosecutorial

misconduct and whether the trial court abused its discretion when giving the jury the additional instruction after deliberations had already begun. *Slip op.* at 2. A panel of this Court affirmed the conviction. *Id.* More specifically, this Court concluded that: the prosecutor did commit misconduct when she called Spiegel a good liar because attorneys are not permitted to offer a personal opinion as to credibility; the comment did not subject Spiegel to grave peril in light of the abundance of evidence of his guilt; Spiegel lacked cogent reasoning to demonstrate fundamental error related to the prosecutor's other objectionable comments; and Spiegel did not preserve the jury instruction issue for review, because he objected on one ground at trial and relied on a different ground on appeal and he also invited alleged error. *Id.* at 8-11.

[4] Beyond that, the Court "expressed [the] belief" that certain comments constituted misconduct. *Id.* at 10. The reference to telling the children to shut up was not based upon the evidence and appeared to the Court to be an attempt to play on the fears of the jurors. *Id.* Suggesting that Spiegel might be healed in prison was an impermissible comment on possible penal consequences. *Id.* Finally, the prosecutor should not have highlighted the disparate roles of prosecutor and defense attorney. *Id.* at 11.

[5] Spiegel filed a petition for post-conviction relief on April 17, 2014, alleging ineffectiveness of trial and appellate counsel. An evidentiary hearing was conducted on February 24, 2015, at which Spiegel's trial and appellate counsel testified. On March 15, 2016, the post-conviction court entered its findings of

fact, conclusions of law, and order denying Spiegel post-conviction relief. This appeal ensued.

## Standard of Review

The petitioner in a post-conviction proceeding bears the burden of establishing the grounds for relief by a preponderance of the evidence. Ind. Post-Conviction Rule 1(5); *Fisher v. State*, 810 N.E.2d 674, 679 (Ind. 2004). When appealing from the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment. *Id.* On review, we will not reverse the judgment of the post-conviction court unless the evidence as a whole unerringly and unmistakably leads to a conclusion opposite that reached by the post-conviction court. *Id.* A post-conviction court's findings and judgment will be reversed only upon a showing of clear error, that which leaves us with a definite and firm conviction that a mistake has been made. *Id.* In this review, findings of fact are accepted unless they are clearly erroneous and no deference is accorded to conclusions of law. *Id.* The post-conviction court is the sole judge of the weight of the evidence and the credibility of witnesses. *Id.*

## Effectiveness of Trial Counsel

Spiegel contends he was denied the effective assistance of trial counsel in four respects: trial counsel (1) failed to adequately challenge statements made by the deputy prosecutor during closing argument; (2) failed to object when P.L.'s father was asked about having special expertise; (3) failed to object to the procedure by which the jury was given an additional instruction during

deliberation; and (4) failed to adequately challenge inappropriate commentary on the part of the deputy prosecutor over the course of the trial.

[8] Effectiveness of counsel is a mixed question of law and fact. *Strickland v. Washington*, 466 U.S. 668, 698 (1984). We evaluate Sixth Amendment claims of ineffective assistance under the two-part test announced in *Strickland*. *Id.* To prevail on an ineffective assistance of counsel claim, a defendant must demonstrate both deficient performance and resulting prejudice. *Dobbins v. State*, 721 N.E.2d 867, 873 (Ind. 1999) (citing *Strickland*, 466 U.S. at 687). Deficient performance is that which falls below an objective standard of reasonableness. *Strickland*, 466 U.S. at 687; *see also Douglas v. State*, 663 N.E.2d 1153, 1154 (Ind. 1996). Prejudice exists when a claimant demonstrates that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *see also Cook v. State*, 675 N.E.2d 687, 692 (Ind. 1996). The two prongs of the *Strickland* test are separate and independent inquiries. *Strickland*, 466 U.S. at 697. Thus, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice … that course should be followed." *Id.*

[9] We "strongly presume" that counsel provided adequate assistance and exercised reasonable professional judgment in all significant decisions. *McCary v. State*, 761 N.E.2d 389, 392 (Ind. 2002). Counsel is to be afforded considerable discretion in the choice of strategy and tactics. *Timberlake v. State*,

753 N.E.2d 591, 603 (Ind. 2001). Counsel's conduct is assessed based upon the facts known at the time and not through hindsight. *State v. Moore*, 678 N.E.2d 1258, 1261 (Ind. 1997). We do not "second-guess" strategic decisions requiring reasonable professional judgment even if the strategy in hindsight did not serve the defendant's interests. *Id.* In sum, trial strategy is not subject to attack through an ineffective assistance of counsel claim, unless the strategy is so deficient or unreasonable as to fall outside the objective standard of reasonableness. *Autrey v. State*, 700 N.E.2d 1140, 1141 (Ind. 1998).

[10] Initially, Spiegel contends that the jury was "poisoned by comments" and his trial counsel was ineffective for failure "to object or appropriate[ly] respond to the deputy prosecutor's unacceptable advocacy." Appellant's Brief at 15-16. He further contends: "had trial counsel objected at various points during the deputy prosecutor's closing arguments, it would have or should have been sustained." Appellant's Brief at 16. However, as the State points out, Spiegel fails, in the corresponding argument, to direct our attention to specific instances where counsel remained silent.

[11] Spiegel briefly summarized the four instances of prosecutorial misconduct discussed by this Court on direct appeal. To the extent that he claims his defense counsel acquiesced, the record does not support this contention. When the deputy prosecutor called Spiegel "a very good liar," counsel immediately objected, made a successful motion to strike, and obtained a jury admonishment. (Tr. at 319.) When the deputy prosecutor claimed "we might as well just tell our children to just take it and shut up," defense counsel

objected and argued, albeit unsuccessfully, that it was improper argument about effect upon the community. (Tr. at 396.) When the deputy prosecutor urged the jury that prison could bring "healing" and she was asking that for the defendant, defense counsel again objected. (Tr. at 399.) When the deputy prosecutor argued, "You can't be set free by hiring an attorney to get you off when you know you've done wrong," defense counsel objected and the trial court ordered the commentary stricken. (Tr. at 407.) Indeed, as the post-conviction court concluded, the record is replete with instances in which defense counsel challenged the deputy prosecutor's advocacy. A bald assertion that defense counsel was not vigorous enough in opposing the State does not adequately support a claim of ineffectiveness. *See Woodson v. State*, 961 N.E.2d 1035, 1041-42 (Ind. Ct. App. 2012) ("*Strickland* does not guarantee perfect representation, only a reasonably competent attorney.") (citation and quotation marks omitted).

[12] Spiegel also contends that trial counsel was ineffective when he failed to object or move for a mistrial after the deputy prosecutor asked P.L.'s father, J.L.,[2] about his "special experience with these kinds of allegations." (Tr. at 193.) According to Spiegel, his counsel should have prevented the State's elicitation of opinion testimony by a lay witness not qualified under Indiana Evidence

---

[2] We observe that J.L. is referred to in the trial transcript only by initials.

Rule 701 or expert testimony by an expert witness not qualified under Evidence Rule 702.

[13]　Evidence Rule 701 provides:

> If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:
>
> (a) rationally based on the witness's perception; and
>
> (b) helpful to a clear understanding of the witness's testimony or to a determination of a fact in issue.

[14]　Evidence Rule 702 provides:

> (a) A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue.
>
> (b) Expert scientific testimony is admissible only if the court is satisfied that the expert testimony rests upon reliable scientific principles.

[15]　With this legal background, we look to the testimony actually elicited from J.L. When asked to describe his "experience" to the jurors, J.L. responded: "My experience with this is that I did three and a half years in prison for the same charges that Max is being charged with." (Tr. at 193.) When J.L. was asked to describe his experience in prison, defense counsel objected, but was overruled. J.L. continued:

First of all, when I went – first went, I was in total denial. A lot of guilt – a lot of guilt. A lot of fear. Then I got involved in the program in prison for people with my charges. … They held me accountable.

(Tr. at 194.) Despite defense counsel's continued objections as to relevance, J.L. went on to testify that he had stayed out of trouble and reconciled with his family. According to J.L., his past experience enabled him to speak to Spiegel "in an understanding way" and urge Spiegel to "be truthful" so that "healing" could begin. (Tr. at 196.)

[16] Spiegel claims the jury was invited to infer that, because J.L. was a convicted child molester, he could identify Spiegel as such. However, J.L. did not offer an "opinion" as to Spiegel's guilt or innocence. His testimony of his own personal experience was irrelevant to the determination of a fact in issue – something which did not go unchallenged by defense counsel.

[17] J.L.'s testimony culminated with his describing admissions made by Spiegel (that he "was sorry for what he had done," that "he did do it" and he was "meeting with his pastor and going through counseling.") (Tr. at 197.) While this was relevant as evidence tending to show Spiegel's consciousness of guilt, it is not opinion testimony. Spiegel has not shown that defense counsel failed to challenge the admission of improper opinion testimony.

[18] Spiegel also claims that his trial attorney was ineffective for failing to object to "the procedure and manner in which an instruction was given to the jury after

deliberations had begun." Appellant's Br. at 20. During deliberations, the jury asked two questions:

1. Did the molestation have to occur between July 1999 and June 2000 or (Rule/Instruction 5A) could the molestation occur at any time prior to her turning fourteen.

2. Define "on or about." How much time can be added to the timeframe July 19, 1999 and June 18, 2000.

(Tr. at 445-46.) A lengthy bench conference ensued, at which defense counsel objected that additional instruction was unwarranted. After the trial court decided that a new instruction would be given, defense counsel lodged a continuing objection to giving the instruction but acquiesced to a particular procedure. The juror's instruction packets were collected and a new written instruction was inserted. The trial court advised the jury: "There is an additional instruction in your Court's preliminary instruction booklet numbered 5A1.[3] Continue to deliberate. Good luck." (Tr. at 446.)[4]

[19] Indiana Code § 34-36-1-6 provides:

If, after the jury retires for deliberation:

---

[3] The trial court had also referenced the new instruction as 5B and 5B1.

[4] The content of the additional instruction was discussed at some length, with the trial court refusing some language proffered by the State. It appears that the jury was instructed: "When time is not an element of a crime or 'of the essence of the offense' the State is only required to prove that the offense occurred anytime within the statutory period of limitations. The State is not required to prove the offense occurred on the precise date alleged in an information." (Tr. at 433.)

(1) there is a disagreement among the jurors as to any part of the testimony; or

(2) the jury desires to be informed as to any point of law arising in the case;

the jury may request the officer to conduct them into court, where the information required shall be given in the presence of, or after notice to, the parties or the attorneys representing the parties.

[20] Once deliberations commence, the trial court should not give additional instructions. *Crowdus v. State*, 431 N.E.2d 796, 798 (Ind. 1982). The rule exists to prevent the trial court from giving special emphasis to a particular issue in the case, whether the emphasis is inadvertent or otherwise. *Id.* Only where there is a "legal lacuna," an empty space or gap in the law, may the trial court respond by means other than rereading the body of final instructions. *Dowell v. State*, 973 N.E.2d 58, 60 (Ind. Ct. App. 2012). If the trial court decides to give an additional instruction because a jury question relates to a legal lacuna, the trial court must reread all of the instructions so that the additional instruction will not be over-emphasized. *Id.*

[21] Here, even assuming a legal lacuna, the trial court did not reread all instructions so as to alleviate emphasis on one. Although defense counsel mentioned at one point: "I think the proper response is reread the instructions," (Tr. at 412), and later re-iterated "we would want it done that way," (Tr. at 432), he did not continue to insist upon follow-through with this procedure after the trial court

decided to give a new instruction. Thus, Spiegel arguably did not receive optimal representation in this matter. Nonetheless, to prevail upon his claim of ineffectiveness, Spiegel must also show that he suffered prejudice, that is, a reasonable probability of a different result sufficient to "undermine confidence in the outcome" of the trial. *Strickland*, 466 U.S. at 694.

[22] Our review of the record leads us to conclude that there is not a reasonable probability that Spiegel would have been acquitted had his defense counsel insisted upon rereading of all instructions. P.L. testified that Spiegel had molested her on multiple occasions, beginning when P.L. was in first grade. P.L.'s mother testified that she confronted Spiegel and he became hysterical and threatened suicide; however, he did not deny the allegation. P.L.'s father testified that Spiegel admitted to molesting P.L., expressed remorse, and claimed to be in counseling to address his behavior. P.L.'s sister testified that she had communicated with Spiegel and he had assured her that he intended to take responsibility for his actions and spare the family a trial. According to P.L.'s sister, Spiegel encouraged her to influence P.L. not to pursue a criminal conviction and offered to pay for P.L.'s tuition and a vehicle. Finally, the State introduced into evidence various text messages from Spiegel to P.L.'s sister, asking for mercy and forgiveness and offering financial incentives. In light of this evidence, trial counsel's failure to secure the rereading of all instructions does not constitute prejudice within the dictates of *Strickland*.

[23] Finally, Spiegel argues that he is entitled to a new trial because of his counsel's cumulative failures to object and follow up with requests for admonishment and

mistrial. However, our review of the record as a whole leads to the conclusion that counsel's performance did not fall below reasonable professional norms. During the presentation of evidence, trial counsel was placed in a very difficult position by testimony of Spiegel's admissions to and communications with P.L.'s family members. Moreover, although counsel did not object at every conceivable juncture, he frequently objected to commentary, argument, or questions propounded to witnesses. Trial counsel's efforts and strategy, although they did not ultimately achieve the result desired by Spiegel, were not so unreasonable as to constitute ineffective assistance of counsel. *See also Badelle v. State*, 754 N.E.2d 510, 539 (Ind. Ct. App. 2001) (deciding in relevant part that, when trial counsel's efforts were "more than adequate" to support a chosen defense, trial counsel's decision not to seek out additional witnesses was a judgment call within the wide range of reasonable assistance), *trans. denied.*

# Conclusion

[24] Spiegel did not establish that he was denied the effective assistance of trial counsel.

[25] Affirmed.

Najam, J., and May, J., concur.