## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 30 2018, 9:15 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Ivan A. Arnaez
Arnaez Law Office
Evansville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Lee M. Stoy, Jr.
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Timothy M. Schieve, *Appellant-Defendant,* | August 30, 2018 |
| | Court of Appeals Case No. 26A01-1711-CR-2815 |
| v. | Appeal from the Gibson Circuit Court |
| State of Indiana, *Appellee-Plaintiff.* | The Honorable Jeffrey F. Meade, Judge |
| | Trial Court Cause Nos. 26C01-1609-FA-928 26C01-1609-F1-929 |

**Pyle, Judge.**

# Statement of the Case

Timothy Schieve ("Schieve") appeals his convictions following a jury trial for Class A felony child molesting[1] and Level 1 felony child molesting[2] as well as the thirty-six-year concurrent sentences imposed for each conviction. Schieve specifically argues that: (1) the trial court improperly coerced the jury by inquiring into the status of its deliberations; (2) the trial court abused its discretion in sentencing him; and (3) his sentence is inappropriate in light of his character and the nature of his offenses. Concluding that the trial court did not improperly coerce the jury or abuse its discretion in sentencing Schieve, and that Schieve's sentence is not inappropriate, we affirm his convictions and sentences.

We affirm.

# Issues

1.    Whether the trial court improperly coerced the jury when it asked about the status of the jury's deliberations.

2.    Whether the trial court abused its discretion in sentencing Schieve.

3.    Whether Schieve's sentence is inappropriate in light of the nature of his offense and his character.

---

[1] IND. CODE § 35-42-4-3.

[2] I. C. § 35-42-4-3.

## Facts

M.S. ("Mother") and Schieve are the parents of M.S. ("M.S."), who was born in December 2004. The couple separated when M.S. was still an infant, and M.S. typically visited Schieve every other weekend. In 2016, when M.S. was eleven years old, she told Mother that Schieve had touched her inappropriately. Following a forensic interview with M.S., the State charged Schieve with Class A felony child molesting, Class B felony incest, Level 1 felony child molesting, and Level 4 felony incest.

At an October 2017 jury trial, M.S. testified that Schieve had inappropriately touched her on three separate occasions. According to M.S., the first incident occurred in the bathroom of Schieve's home while M.S. was changing into her swimsuit. M.S. specifically testified that Schieve entered the bathroom, asked M.S. to sit on the sink, and "put his hand on [her] swimsuit bottoms and started moving his hand." (Tr. Vol. 2 at 247). M.S. further testified that the second incident occurred in the living room of Schieve's home. According to M.S., while Schieve and M.S. were watching television, Schieve, who was wearing his boxers, "had [M.S.] take off [her] shorts to where [she] was just in [her] underwear, and he had [her] sit on his lap while [they] watched TV." (Tr. Vol. 2 at 150).

In addition, M.S. testified that the third incident occurred in Schieve's bedroom when he instructed M.S. to touch his penis with her hands and mouth.

According to M.S., Schieve had told her that she "would do it as good as [her] mother would." (Tr. Vol. 3 at 5). M.S. explained that she knew what to do with her hands and her mouth because of the pornographic videos that she and Schieve had watched together. M.S. further testified that when Schieve ejaculated, he asked M.S. to "drink the white stuff" because her mother did. (Tr. Vol. 3 at 5).

[6] Lastly, M.S. testified that she now called Schieve by his first name, Wayne, rather than Dad. M.S. specifically explained as follows: "[b]ecause after, like, learning more, it got me to understand that somebody that loved you wouldn't hurt you, and "Dad" and "Father" is supposed to be a loving word." (Tr. Vol. 2 at 32).

[7] Mother testified that she and Schieve had been involved in a six-year relationship and that oral sex was something that Schieve particularly enjoyed. Mother also testified that when she and Schieve were together, there was pornography in the home.

[8] In addition, Brandon Willis ("Willis"), Schieve's cellmate in the Gibson County Jail, testified that after Schieve learned that Willis had previously been convicted of incest, Schieve told him that he had watched pornographic DVDs with his daughter. Willis also testified that Schieve had told him that he had fondled his daughter and made his daughter fondle him.

[9] After closing arguments and final instructions, the trial court sent the jury to deliberate at about 1:30 pm. Four hours later, at approximately 5:30 p.m., the

trial court brought the jury back into the courtroom to check on the status of deliberations. At that time, the following colloquy between the trial court and the jury foreperson took place:

[10]    THE COURT: We show the jury comes back in at the request of the Court just for status. . . . All right. I just want to touch bases with you. And I – when I brought you out here, this is no way meant to encourage you to vote one way or the other. Okay. But I want to just remind you that the evidence has been closed, and I can't really reopen it for any other testimony or transcripts or so forth because I believe that was one of the jury questions was do we have transcripts available of certain testimony. We don't have that. They have that stuff on TV. We don't have that in real life. I guess my question for the jury is a couple. One, do you believe – and who is the foreman? I don't know who the foreman is. Okay. Do you believe a unanimous opinion can be reached if given more time?

FOREPERSON: Possibly. We had a unanimous decision, but then somebody changed a vote, so we kind of went back to discussing it.

THE COURT: Okay. So that's kind of where you're at now? That's fair. Because I just wanted to get a feel for where you guys were. The other question I had, you did go to lunch early. It's about 5:30 now. Are you guys getting hungry.

FOREPERSON: Yeah. Everybody is getting pretty hungry.

THE COURT: Okay. Let's do this. Since – I can read all the jury instructions to you again, but you can read them yourself. I don't think you really want to hear me read it. That's really all I can do. So you have the evidence, you have the instructions. Let's do this. Let me order some pizzas maybe from across the street if that's okay and then let you go back and see if you guys can get that unanimous verdict that the statute requires.

FOREPERSON: Okay.

THE COURT: Okay. You guys got – anybody got any requests for certain types of pizza?

FOREPERSON: Do they have chocolate pizza?

THE COURT: I will let you work that out with the bailiff. I better stay out of this or I'll get myself in lots of trouble. I'll let you work that out with the bailiff. All right. I'll let you guys go back. Yeah. They want to make sure because it is getting – I can see you guys are probably getting hungry. Okay. All right.

(Tr. Vol. 3 at 159-60). After the jury exited the courtroom, the trial court asked, "Any other motions?" (Tr. Vol. 2 at 160). Neither side made any objections or motions. Approximately ninety minutes later, the jury returned with their verdicts finding Schieve guilty on all counts.

[11] During the preparation of his Pre-Sentence Investigation Report, Schieve told the probation officer that "his hope [was] one day, when his daughter [was] older, she [would] realize how selfish she was for making up lies about him." (App. Vol. 10 at 7). At the November 2017 sentencing hearing, Schieve's father testified that Schieve was "a loving father and a loving son" and had "helped in the community." (Tr. Vol. 3 at 170). Schieve's father also testified that the witness testimony at trial "was full of untruths and fabrications." (Tr. Vol. 3 at 171). Schieve told the trial court that he did not "feel like [he] had representation that [he] should have had." (Tr. Vol. 3 at 173).

[12] M.S. submitted an impact letter wherein she described the emotional impact that Schieve's crimes had had on her. Specifically, she explained that she: (1) cried herself to sleep on many occasions; (2) had nightmares that led her to "sleep in mommy's room;" and (3) wondered why a father would abuse his own daughter. (State's App. at 2). In the letter, M.S. explained that she "no longer g[o]t attached easily" and that it was hard to trust anyone. (State's App. at 3). Mother also wrote an impact letter where she explained that M.S. no

longer felt safe in her own home and that she had lost family and her innocence as a result of Schieve's offenses.

[13] The evidence presented at the sentencing hearing revealed that Schieve has an extensive misdemeanor criminal history. Specifically, Schieve has multiple prior convictions for driving while suspended, criminal mischief, and battery. In addition, he has a prior conviction for neglect of a dependent, which involved a child.

[14] Following the presentation of evidence, the trial court found the following aggravating circumstances: (1) Schieve abused his position of trust with M.S.; and (2) M.S. suffered emotional and psychological harm. The trial court also found that Schieve's lack of remorse was a modest aggravating factor. The trial court merged each incest conviction with the respective child molesting conviction and sentenced Schieve to concurrent terms of thirty-six (36) years in the Department of Correction for each child molesting conviction.

# Decision

[15] Schieve argues that: (1) the trial court improperly coerced the jury by inquiring into the status of its deliberations; (2) the trial court abused its discretion in determining aggravating factors for sentencing him; and (3) his sentence is inappropriate in light of his character and the nature of his offenses. We address each of his arguments in turn.

### 1. Jury Inquiry

[16] Schieve first argues that he was deprived of a fair trial because the trial court's statement during its colloquy with the jury foreperson "improperly coerced the jury through numerical inquiry. . . ." (Schieve's Br. at 21). At the outset, we note that Schieve did not object at trial to the trial court's colloquy with the jury foreperson. He has therefore waived appellate review of this issue. *See Palilonis v. State*, 970 N.E.2d 713, 730 (Ind. Ct. App. 2012) (holding that failure to make a contemporaneous objection when the evidence is introduced at trial results in waiver of the issue on appeal), *trans. denied*. Because Schieve has waived appellate review of this argument, he must establish fundamental error, which is only available in egregious circumstances. *See Absher v. State*, 866 N.E.2d 350, 354 (Ind. Ct. App. 2007). To qualify as fundamental error, the "'error must be so prejudicial to the rights of the defendant as to make a fair trial impossible'" and must "'constitute a blatant violation of basic principles, the harm or potential for harm must be substantial, and the resulting error must deny the defendant fundamental due process.'" *Id.* (citing *Benson v. State*, 762 N.E.2d 748, 755 (Ind. 2002)).

[17] Here, our review of the trial court's statement to the jury during the colloquy between the trial court and the jury foreperson reveals that the State is correct that the "trial court did not make a specific [numeric] inquiry into the jury's divisions on the verdict . . . ." (State's Br. at 14). Rather, although the jury foreperson volunteered the jury's numerical division, the trial court's question neither elicited nor required such detail. Specifically, the trial court sought only to assess whether, if given more time, the foreman believed that the jury could

reach a unanimous verdict and whether the jurors were ready for dinner since they had had an early lunch. We find no error here, fundamental or otherwise.[3]

## 2. Abuse of Discretion in Sentencing

[18]    Schieve next argues that the trial court abused its discretion in sentencing him. Sentencing decisions rest within the sound discretion of the trial court. *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007). So long as the sentence is in the statutory range, it is subject to review only for an abuse of discretion. *Id.* An abuse of discretion occurs if the decision is clearly against the logic and effect of the facts and circumstances before the court or the reasonable, probable, and actual deductions to be drawn therefrom. *Id.* at 491. A trial court may abuse its discretion in a number of ways, including: (1) failing to enter a sentencing statement at all; (2) entering a sentencing statement that includes aggravating and mitigating factors that are unsupported by the record; (3) entering a sentencing statement that omits reasons that are clearly supported by the record; or (4) entering a sentencing statement that includes reasons that are improper as a matter of law. *Id.* at 490-91.

---

[3] Schieve also argues that the trial court's statement to the jury during the colloquy between the trial court and the jury foreperson amounted to an impermissible *Allen* charge. An *Allen* charge is an instruction given to urge an apparently deadlocked jury to reach a verdict. *Hero v. State*, 765 N.E.2d 599, 604 (Ind. Ct. App. 2002). Such additional instructions are closely scrutinized to ensure that the trial court does not coerce the jury into reaching a verdict that is not truly unanimous. *Id.* Here, however, the trial court neither believed that the jury was deadlocked nor gave any additional instructions. Schieve's *Allen* charge argument therefore fails.

[19] Here, Schieve contends that the trial court abused its discretion by including improper aggravating factors that were unsupported by the record. Our review of the evidence reveals otherwise.

[20] The trial court's first aggravating factor was that Schieve violated a position of trust with M.S. Schieve specifically argues that "trust between parent and child is already written into the element of Incest as and applied to Child Molestation under these facts . . . ." (Schieve's' Br. at 40). He is mistaken. First, one does not have to be a parent or have a position of trust to commit the offense of child molesting. *See* IND. CODE § 35-42-4-3. In addition, this Court has previously explained that the "position of trust aggravator is frequently cited by sentencing courts where an adult has committed an offense against a minor and there is at least an inference of the adult's authority over this minor." *Rodriguez v. State*, 868 N.E.2d 551, 555 (Ind. Ct. App. 2007). We further explained that this aggravator applies in cases where the defendant has a more than casual relationship with the victim and has abused the trust resulting from the relationship. *Id.* This is usually the case where the defendant is the victim's parent or stepparent. *Id.* Here, Schieve is M.S.'s father. The record supports this aggravating factor, and trial court did not abuse its discretion in including it.

[21] The second challenged aggravating factor was the emotional and psychological harm inflicted on M.S. The trial court may properly consider this harm as an aggravating factor where the harm or trauma is more than that which is normally associated with the crime. *Thompson v. State*, 793 N.E.2d 1046, 1052

(Ind. Ct. App. 2003). Here, the emotional and psychological harm inflicted on M.S. was exacerbated because Schieve is her biological father. *See Ludack v. State*, 967 N.E.2d 41, 48 (Ind. Ct. App. 2012) (explaining that "the acts of sexual molestation pose a greater threat of severe, long-lasting emotional harm" when the perpetrator is someone close to the victim). In addition, M.S. wrote an impact letter describing her ongoing emotional turmoil since being molested. The trial court did not abuse its discretion in finding the emotional and psychological harm inflicted on M.S. to be an aggravating factor.

[22] The trial court's third aggravating factor was Schieve's lack of remorse. A trial court may consider a defendant's lack of remorse as an aggravating circumstance. *Georgopulos v. State*, 735 N.E.2d 1138, 1145 (Ind. 2000). It is not error for a trial court to consider lack of remorse as an aggravating factor even if the defendant claims that he is innocent. *Id.* "A lack of remorse is displayed by a defendant when he displays disdain or recalcitrance, the equivalent of "I don't care."" *Cox v. State*, 780 N.E.2d 1150, 1158 (Ind. Ct. App. 2002). "This is distinguished from the right to maintain one's innocence, i.e., 'I didn't do it.'" *Id.* Here, Schieve stated that "his hope [was] one day, when his daughter [was] older, she [would] realize how selfish she [was] for making up lies about him." (App. Vol. 10 at 7). Based on this evidence, the trial court acted well within its

discretion in finding Schieve's lack of remorse to be a modest aggravating factor.[4]

### 3. Inappropriate Sentence

Lastly, Schieve argues that his sentence is inappropriate. Indiana Appellate Rule 7(B) provides that we may revise a sentence authorized by statute if, after due consideration of the trial court's decision, we find that the sentence is inappropriate in light of the nature of the offense and the character of the offender. The defendant bears the burden of persuading this Court that his sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006). Whether we regard a sentence as inappropriate turns on the "culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." *Cardwell v. State*, 895 N.E.2d 1219, 1224 (Ind. 2008).

The Indiana Supreme Court has further explained that "[s]entencing is principally a discretionary function in which the trial court's judgment should receive considerable deference." *Id.* at 1222. "Such deference should prevail unless overcome by compelling evidence portraying in a positive light the

---

[4] Schieve also argues that the trial court abused its discretion in finding the victim's age and Schieve's criminal history to be aggravating factors. However, our review of the transcript reveals that the trial court considered neither M.S.'s age nor Schieve's criminal history to be aggravating factors. We further note that even if the trial court had erred in finding these to be aggravating factors, a single aggravating factor can support an enhanced sentence. *Willey v. State*, 712 N.E.2d 434, 446 (Ind. 1999). Here, we have found three valid aggravating factors.

nature of the offense (such as accompanied by restraint, regard, and lack of brutality) and the defendant's character (such as substantial virtuous traits or persistent examples of good character)." *Stephenson v. State*, 29 N.E.3d 111, 122 (Ind. 2015).

[25] When determining whether a sentence is inappropriate, the advisory sentence is the starting point the legislature has selected as an appropriate sentence for the crime committed. *Childress*, 848 N.E.2d at 1081. The sentencing range for Level 1 felony is twenty (20) to fifty (50) years, and the range for a Class A felony is twenty (20) to forty (40) years. IND. CODE § 35-50-2-4(a)-(b). Both have an advisory sentence of 30 years. *Id.* Here, Schieve was sentenced to concurrent terms of thirty-six (36) years for his Class A and Level 1 felonies. These sentences are each less than the maximum sentence and just six years more than the advisory sentence.

[26] Regarding the nature of the offenses, Schieve molested his daughter while she visited him on weekends. He groomed her to perform sex acts by watching pornography with her and gradually building his sexual contact with her. Ultimately, Schieve forced M.S. to fondle his penis and perform oral sex on him.

[27] Turning to Schieve's character, we note that this was not Schieve's first contact with the criminal justice system. Schieve has prior misdemeanor convictions for criminal mischief, battery, and driving while suspended. In addition, Schieve has a prior conviction for neglect of a dependent, which involved a

child. These multiple convictions reflect poorly on his character. *See Moss*, 13 N.E.3d at 448 (holding that "even a minor criminal history is a poor reflection of a defendant's character"). Schieve's violation of his position of trust with his daughter also reflects very poorly on his character.

[28] Schieve has failed to meet his burden to persuade this Court that his aggregate thirty-six year sentence for one Level 1 felony conviction and one Level A felony conviction is inappropriate.

[29] Affirmed.

Vaidik, C.J., and Barnes, Sr.J., concur.